HENRY DINGLEY ET AL.

*vs.*

PETER DOSTIE

Cumberland.   Opinion, March 15, 1951.

*Agger & Goffin,*
*By Jacob Agger,* for plaintiffs.

*Ralph W. Farris, Jr.,* for defendant.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.   (THAXTER, J., did not sit)

WILLIAMSON, J. This is an action of assumpsit on an account annexed and the general money counts to recover for storage of an automobile from October 13, 1948 to the date of the writ in April 1949. The case is before us on exceptions to a finding for the plaintiffs by the justice of the Superior Court by whom the case was decided without the aid of a jury and under reservation of the right to ex-

cept as to matters of law. No objection is raised to the assessment of damages at $80.67. At trial the plaintiffs removed a charge for labor from the case, leaving only the claim for storage for consideration.

The controlling issue in the case is raised by the exception which reads:

> "The Court made no specific finding as to the facts in ordering judgment for the plaintiff. The defendant is aggrieved by such finding, claiming there is no evidence to support the findings of such facts as must necessarily have formed the basis of the judgment; and claiming further, that legitimate inferences to be drawn from the evidence cannot support the judgment."

The exception raises a question of law under the rule that "only when (the justice) finds facts without evidence or contrary to the only conclusion which may be drawn from the evidence is there any error of law." *Sanfacon* v. *Gagnon et als.*, 132 Me. 111, 167 A. 695; *Northwestern Investment Co.* v. *Palmer et als.*, 113 Me. 395, 94 A. 481.

The plaintiffs under the name of Packard-Portland (by which name we will sometimes refer to them) are automobile dealers in Portland and for our purpose more particularly sell and repair Crosley cars. Mr. Edward F. Poole was the general manager of Packard-Portland throughout the period of the transactions here involved. In May 1947 the defendant, residing in Augusta, purchased a new Crosley sedan from Packard-Portland carrying a new-car warranty in which it is stated that Packard-Portland is an "Authorized Crosley Dealer" and which is signed "PACKARD-PORTLAND" over the words "Dealer's Signature."

The defendant became dissatisfied with the operation of the car. At length under date of March 2, 1948, Crosley Motors, Inc. (the manufacturer) wrote defendant, acknowl-

edging receipt of a letter from him dated February 18th, and further saying:

> "We are again contacting the Packard-Portland Company, requesting that they investigate your service problems and handle this matter with you. We suggest that you contact their service department affording them the opportunity to thoroughly inspect your car, they will then advise this office of their findings and recommendations for the handling of your service."

The letter bore the notation "CC: Packard-Portland."

On March 9, 1948 Packard-Portland wrote the defendant at Augusta as follows:

> "We are in receipt of a letter from Crosley Motors dated March 2, 1948, in which it states that you were advised to contact our service department at your earliest possible convenience.
>
> If you will please bring your car in to us, we will repair it at no expense to you."

The importance of the letter of March 9th will later appear.

Within a few days and in any event before March 17th, the defendant's Crosley car was towed from Augusta to Portland and left at the plaintiff's garage. No information was then given to Packard-Portland about the nature of the trouble with the car.

On March 17th Mr. Poole wrote the defendant requesting that defendant tell him what was wrong with the automobile. In the course of a telephone call from defendant in reply to the letter, the manager learned that the trouble was in the engine. He explained to defendant the necessity of an authorization from the manufacturer to make the repairs. The explanation in the record, which the court could properly believe was the substance of the conversation, was as follows:

"In order to do any work when it is out of the written warranty the customer will pay for it and we will do the work and try to get credit from the factory to return to the customer, or we can get authorization to strip the motor, from the customer, and send a claim to Crosley and wait their recommendation of what to do, whether they will stand behind it or not."

The defendant told the manager to "go ahead on that basis." Packard-Portland proceeded to "strip" or "tear down" the motor, and notified Crosley on a "regular claim form."

On August 18th Packard-Portland by a letter signed by the manager wrote the defendant as follows:

"Very sorry I have not answered you sooner but have been waiting for a reply from Crosley Motors. Your car is much beyond the guarantee period, taking into consideration the length of time it has been here—it is still so previous to that.

We can fix your car for you but it will be at your expense. The only thing we can do to help will be to give you some consideration on our labor. As far as parts, they will have to be at the regular price.

Please advise by return letter if you want me to start repairs on your automobile."

Letters on September 21st and October 12th signed by the manager from Packard-Portland to the defendant complete the correspondence. On September 21st Packard-Portland wrote the defendant requesting advice by return letter whether or not defendant wanted Packard-Portland to start repairing the car and saying further, "If you decide not to, we would appreciate it very much your taking your car as it is taking up our working space." The letter of October 12th read as follows:

"We are still waiting for your authorization to repair your Crosley Sedan. If you have decided

not to have your automobile repaired, please notify us at once.

We will have to start charging you storage at the rate of $1.50 per twenty-four hour period."

The case does not turn upon defendant's contention that failure of plaintiffs to restore the car to its condition on delivery to Packard-Portland in March prevents recovery. The court may well have concluded that the car was in a condition reasonably to be expected after the motor had been "torn down."

The relationship of bailor and bailee was created by the delivery of the Crosley car to Packard-Portland shortly after March 9th. The question is whether upon the termination of the bailment it was the duty of the plaintiffs to deliver the car to defendant in Portland or Augusta. The decision hinges upon the effect to be given the letter of March 9th with the statement, "If you will please bring your car in to us, we will repair it at no expense to you."

We neither consider nor determine whether the March 9th letter plus delivery of the car to the plaintiffs constituted a valid contract with offer, acceptance and consideration on the part of the defendant, or whether, if a valid contract was made, it was later altered by agreement or rescinded. See *Bigelow* v. *Bigelow,* 95 Me. 17, 49 A. 49. The present action relates only to a charge for storage.

The correspondence, the plaintiffs urge, provided an ample basis for the court to find that the car was brought to Portland in order that the plaintiffs might ascertain the type of repairs required and take up with the manufacturer whether the manufacturer would consider itself liable for the repairs.

In our view, however, the only conclusion to be drawn from the evidence is that in reliance upon the "repair without expense" letter, the defendant delivered his car to

Packard-Portland. The letter of March 9th was part of a triangular correspondence between Crosley Motors, Inc.—the manufacturer, Packard-Portland—the authorized dealer, and defendant—the purchaser. It was a letter from an "Authorized Crosley Dealer" from whom the defendant had purchased the car. The car was towed to Packard-Portland shortly after receipt of the March 9th letter. It would be unreasonable to believe that it was taken to Portland in reliance upon the letter from Crosley Motors, Inc. of March 2nd.

In the record there is an attack by Packard-Portland upon the letter of March 9th. It was claimed, and the court could find, that the manager's secretary, authorized by him to write and sign a letter to the defendant to bring his car in for inspection, exceeded her actual authority in using the word "repair," and not the word "inspect." In argument, however, plaintiffs lay no stress on this claimed lack of authority and say:

> "(Defendant) had also by then received (the letter of March 9th) and had been told by the manager that 'we would repair it or inspect it.'" The quoted words are from testimony of the manager as follows:

> "I told Mr. Dostie to bring his car to our service department and we would repair it or inspect it. I don't remember the exact words—at no charge. My letter followed the Crosley letter."

The manager was referring to the very letter which he in later testimony said was not authorized. Surely the defendant had no reason to suspect an error by Packard-Portland. He could rely, and he did rely, upon the letter.

The effect of the warranty and the conditions under which repairs would be undertaken and by whom paid were explained to the defendant by the manager of Packard-Portland *after* and not *before* defendant had incurred the

expense of delivery of the car. Whether the defendant would have the repairs made at his expense was a question to be considered only after word from Crosley Motors, Inc. Nothing was said in the telephone conversation between the plaintiffs' manager and the defendant about where delivery of the car should be made if the bailment ended without the repairs having been made.

The case is readily distinguishable from the ordinary situation in which an owner leaves his car at a garage for repairs. As the court said in *Daigle* v. *Pelletier,* 139 Me. 382 at 386, 31 A. (2nd) 345:

> "If the contract does not, by its express or implied terms, fix the place of return the car must be delivered in the garage or shop where it was deposited or at some other appropriate place where it is kept for redelivery on demand and the bailee is under no obligation to make delivery of it elsewhere."

In the instant case the car was placed by defendant in possession of Packard-Portland for repairs to be made without expense to the owner. Whether Crosley Motors, Inc. or Packard-Portland bore the expense would not, of course, concern the owner. We may agree that, if the repairs had been made, it would have been the duty of the defendant to have taken delivery of the car at the garage within a reasonable time after notice that the repairs had been completed.

Upon word that Crosley Motors, Inc. would not pay for the repairs, and in absence of authority to make the repairs at the expense of defendant, Packard-Portland could have prevented the necessity of storage by delivery of the car to defendant in Augusta. In our view the owner was under no obligation, insofar as the terms of the bailment were concerned, to accept delivery of the car at the plaintiff's garage until the repairs were made. It follows that plain-

tiffs were not entitled to charge for the storage. The exceptions must be sustained.

In view of our decision reached upon the vital issue, it is unnecessary that we consider the remaining exceptions relating to the exclusion of evidence.

The entry will be:

*Exceptions sustained.*