ANDREW E. BOUCHARD D/B/A ROLAND & ANDY'S
RESTAURANT
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

STANLEY E. SCRIBNER D/B/A AVIE'S CAFE
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

STATE CAFE, INC.
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Cumberland.    Opinion, February 6, 1961.

*Jacobson & Jacobson,*
*Henry Steinfeld, for* plaintiffs.

*Ralph Farris,*
*Richard Foley, Asst. Atty. Generals,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J. Each of these cases involves a deficiency assessment of sales tax, interest and penalties by the State Tax Assessor acting under the provisions of R. S., 1954, Chap. 17, Sec. 20, as amended by P. L., 1957, Chap. 80. The tax assessed in the State Cafe case covered the period from October 1, 1957, to January 31, 1959, and in the other cases from October 1, 1957, to February 28, 1959. The deficiency assessment against Andrew E. Bouchard amounted to $1040.40, that against Stanley E. Scribner to $598.29, and that against State Cafe, Inc. to $856.65. In each case the taxpayer sought a reconsideration of the assessment and after reconsideration the original assessment was upheld. An appeal to the Superior Court was made in each case based upon the grounds that the taxpayer was a retailer primarily engaged in making sales for ten cents or less and kept satisfactory records thereof; that the tax assessed covered such sales, and that under the provisions of R. S., 1954, Chap. 17, Sec. 3, the tax assessor was without authority to tax these sales. Stipulations were entered into in each case specifying that Ernest H. Johnson during the entire period in question, and at the time of hearing, was the duly ap-

pointed and qualified State Tax Assessor, and that he purported to levy the alleged deficiency assessments in the amounts heretofore stated. It was further stipulated that the taxpayer in each case was a retailer of tangible personal property within this state during the period covered by the assessment, and did not have a permanent classified permit issued by the State Tax Assessor during that period. It was also stipulated that all statutory requirements necessary for the perfection of the appeal of the taxpayers had been taken. After hearing, the presiding justice sustained the appeal and ordered the tax abated in each case. The State Tax Collector appealed to this court from the decision and order of the presiding justice.

Although the cases were heard separately in the court below, they come here on one record and were argued together before this court. The same principles of law are involved in all of the cases. There is no conflict in the testimony in any case, although the State Tax Assessor and the taxpayer draw different conclusions therefrom. We are aware of no reason why the issues in all cases cannot be determined in one opinion.

The pertinent portions of the applicable statutes and regulations thereunder are as follows:

> "A tax is imposed at the rate of 3% on the value of all tangible personal property, sold at retail in this state on and after July 1, 1957, measured by the sale price, except as in this chapter provided." R. S., 1954, Chap. 17, Sec. 3, as amended by P. L., 1957, Chap. 402, Sec. 1.

> "No tax shall be imposed upon such property sold at retail for 10c or less, *provided the retailer is primarily engaged in making such sales and keeps records satisfactory to the state tax assessor.*"

> R. S., 1954, Chap. 17, Sec. 3.   (Emphasis ours.)

> "Adding tax to sale price.—Every retailer shall add the sales tax imposed by this chapter, or the aver-

age equivalent of said tax, to his sale price, except as otherwise provided, and when added the tax shall constitute a part of the price, shall be a debt of the purchaser to the retailer until paid and shall be recoverable at law in the same manner as the purchase price. When the sale price shall involve a fraction of a dollar, the tax shall be added to the sale price upon the following schedules:

| Amount of Sale Price | Amount of Tax |
|---|---|
| $0.01 to $0.14, inclusive | 0c |
| .15 to .39, inclusive | 1c |
| .40 to .74, inclusive | 2c |
| .75 to .99, inclusive | 3c |

When the sale price exceeds 99c, the tax to be added to the price shall be 3c for each whole dollar, plus the amount indicated above for each fractional part of a dollar.

When several articles are purchased together and at the same time, the tax shall be computed on the total amount of the several items.

Breakage under this section shall be retained by the retailer as compensation for the collection."

R. S., 1954, Chap. 17, Sec. 5, as amended.

"Records of retailers.—Every retailer shall keep records of his sales, the kind and form of which shall be adequate to enable the assessor to determine the tax liability. All such records shall be safely preserved for a period of 3 years in such manner as to insure their security and accessibility for inspection by the assessor or by any of his employees engaged in the administration of this chapter. The assessor may consent to the destruction of any such records at any time within said period."

R. S., 1954, Chap. 17, Sec. 29.

"Presumption concerning sales.—The burden of proving that a transaction was not taxable shall be upon the person charged with tax liability."

R. S., 1954, Chap. 17, Sec. 9.

"Administration.—The assessor is authorized and empowered to carry into effect the provisions of this chapter and, in pursuance thereof, to make and enforce such reasonable rules and regulations consistent with this chapter as he may deem necessary."

R. S., 1954, Chap. 17, Sec. 23.

Pursuant to the foregoing provision the following regulation was issued on June 5, 1951, and was in effect during the period in question:

"Each registered seller, and each retailer as defined in the Sales and Use Tax Law, shall keep adequate and complete records of his business in this State showing:

(1) The total amount of the sale price of all sales of tangible personal property including both taxable and nontaxable items and any services that are a part of a sale.

\* \* \* \* \* \* \*

These records must include, the normal books of account ordinarily maintained by the average prudent business man engaged in the activity in question, together with all bills, receipts, invoices, cash register tapes, or other documents of original entry supporting the entries in the books of account as well as all schedules or working papers used in connection with the preparation of tax returns.

All such records must be maintained for State Bureau of Taxation audits for a period of at least three years unless the destruction or other disposal of the same shall be authorized by the State Tax Assessor, or his authorized representative, in writing."

Regulation #5 issued by State Tax Assessor.

In construing statutes relating to the assessment of taxes, taxation is the general rule and exemption from taxation is the exception. The burden of proving an exemption rests upon the party claiming it, and he must bring his case clear-

ly within the spirit and intent of the act creating the exception. *Bangor* v. *Masonic Lodge,* 73 Me. 428, 433, 40 Am. Rep. 369. See also *Calais Hospital* v. *City of Calais,* 138 Me. 234, 241; 24 A. (2nd) 489; *Camp Enoh Associates* v. *Inhabitants of Lyman,* 132 Me. 67, 70. The taxpayers in these cases claim that they are not taxable on articles sold for 10c or less for the reason that they were primarily engaged in such sales and kept records satisfactory to the State Tax Assessor. The rule set forth above applies with no less force to those claiming an exemption from the payment of a sales tax on tangible personal property sold at retail in this state. The burden is upon the taxpayer in each of these cases to clearly show that he was primarily engaged in the retail sales of articles for ten cents or less and that he kept records satisfactory to the State Tax Assessor.

The presiding justice in ordering a tax abatement in each case found that the taxpayer had carried his burden of proof; that he was a retailer primarily engaged in making sales of property at retail for ten cents, and that he kept records satisfactory to the State Tax Assessor within the meaning of R. S., 1954, Chap. 17, Sec. 3.

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
> Rule 52(a), Maine Rules of Civil Procedure.

See also *Harriman* v. *Spaulding,* 156 Me. 440, 443, 165 A. (2nd) 47.

Where only one inference can reasonably be drawn from undisputed facts, the question is one of law and not of fact. *Maine Water Company* v. *Towage Company,* 99 Me. 473, 485, 59 A. 953. Only when a justice finds facts without evidence or contrary to the only conclusion which may be drawn from the evidence is there any error of law. *State* v.

*Harnden, Applts.,* 154 Me. 76, 77, 143 A. (2nd) 750; *Dingley et al.* v. *Dostie,* 146 Me. 195, 196, 79 A. (2nd) 169.

We now turn to the question of whether the taxpayer kept requisite records under the provisions of R. S., 1954, Chap. 17, Secs. 3 and 29, and under Regulation #5. The interpretation of these provisions is a question of law. That portion of Sec. 3 which sets forth that no tax shall be imposed upon property sold at retail for ten cents or less provided the taxpayer keeps records satisfactory to the State Tax Assessor must be considered in conjunction with Sec. 29 which requires retailers to keep records of their sales, the kind and form of which shall be adequate to enable the assessor to determine the tax liability. These provisions are a part of a revenue act known as the Sales and Use Tax Law, which imposes a tax on the value of all tangible personal property sold at retail in this state, with certain exceptions specified therein. Any person claiming non-liability for the payment of a tax on property sold at retail for ten cents or less must bring his case clearly within the provisions of Sec. 3. The necessity of requiring the keeping of proper records in order to do so is obvious. Without such a requirement the legislation would be ineffective to accomplish its purpose. Whatever may be considered adequate records under the other provisions of the act, it was without doubt the intention of the legislature that in cases in which the taxpayer claims he is primarily engaged in making sales for ten cents or less, his records must be kept in such a manner that an agent from the tax assessor's office be able to determine from those records whether the taxpayer is primarily engaged in making such sales, and after making that determination to ascertain the tax, if any, due to the state. If the taxpayer claims that an item entered on his records at over ten cents is composed of one or more items of ten cents or less, he must be able to establish the breakdown by his records.

The assessor cannot exercise an arbitrary judgment in relation to the sufficiency of a taxpayer's records, and if the records are kept in such a manner that the agent who makes the examination can determine from an inspection thereof whether or not the taxpayer is primarily engaged in making sales for ten cents or less, and to determine therefrom any tax due, then the records are necessarily "satisfactory to the state tax assessor." If the records do not meet this requirement, then they are not sufficient within the meaning of the statute.

Having these requirements in mind we now examine the nature of the business conducted in each case and the type of records kept by the taxpayer. None of the taxpayers held a permanent classified permit establishing the percentage of exempt sales, and no case presented a conflict in evidence.

The taxpayer Bouchard operated a combination restaurant and beer parlor, so called, in Brunswick, under the style of Roland and Andy's Restaurant. He sold beer and ale and miscellaneous articles in addition to some food. The beer and ale were sold for ten and fifteen cents per glass, cigarettes were sold for twenty-eight cents, and cigars from five to fifteen cents. The taxpayer registered his sales on a cash register. The taxpayer testified that nontaxable sales were indicated on the register tape by a Roman numeral two (II) preceding the amount of the sale, and that taxable sales were indicated by the amount of the sale without any legend on the tape. If the taxpayer or his waitresses were aware that one customer paid for several ten cent glasses of beer, the transaction was treated as a taxable sale. The tape also showed amounts paid out by the taxpayer and indicated by the letter "P." Each night the tape covering the business of the day was taken from the cash register and the aggregate amount of the taxable items as indicated on the tape was entered in a book under the date of sale. The total tax thereon was also entered therein. This book also contained

a column marked "tobacco" which apparently was designed to cover all sales claimed to be nontaxable, and in this column the aggregate amount of such sales was entered each day. This book also contained a record of items of expense.

This taxpayer presented in evidence a tape reflecting the business of the restaurant on March 11, 1958. This tape was apparently a typical tape record showing the daily business of the taxpayer. Tapes covering the business during the taxable period in question were available at the time of hearing but were not introduced in evidence. An examination of this tape indicates the total business of that date as $59.39. Of this amount $22.46 was listed as taxable sales, and the balance of $36.93 as nontaxable. An examination of the tape for March 11 discloses that of the sixty-four entries of items designated by a Roman numeral two as nontaxable and aggregating $36.93, only seventeen items totaling $1.60 were for sales registered on the tape in the amount of ten cents or less. The sales totaling $22.46, and indicated on the tape as taxable, consisted of items of more than ten cents each.

The book mentioned above and the register tapes constitute the only records of sales kept by the taxpayer. These records do not indicate that the taxpayer was primarily engaged in making sales for ten cents or less. On the contrary, the records on their face indicate that a small part of the taxpayer's business was of sales of that nature. The taxpayer claims, however, that money paid for ten cent drinks was allowed to accumulate on the top of the cash register and the total accumulation was from time to time rung up as one nontaxable item. No slips showing the items served and paid for, as are often used in restaurants, or any other records, were used by the proprietor or his waitresses to substantiate the claim that the items of over ten cents, listed on the tape as nontaxable, were in fact totals of one or more sales of ten cents or less. A person making an inspection of the records kept in this case could not determine

therefrom the percentage of sales at ten cents or less. We therefore hold as a matter of law that the records kept by the taxpayer were not adequate within the meaning of R. S., 1954, Chap. 17, Secs. 3 and 29.

The taxpayer Stanley E. Scribner conducted a restaurant business in Portland under the style of Avie's Cafe, employing three persons therein. He sold draught beer, bottled beer, cigars, cigarettes, popcorn, potato chips and miscellaneous merchandise. He testified that all sales were registered on a cash register tape; that draught beer sales were registered on the tape by using a key number one, and that miscellaneous items were registered by using a key number two. He testified that he did not sell beer for more than ten cents, except bottled beer, and that he collected a penny tax on bottled beer and rang the sale up on key number two. Each day he took the total of sales indicated by key number one and entered that total on a daily sheet, and he likewise entered on that sheet the total sales indicated by key number two. At the end of each week, weekly totals were obtained from these daily sheets. From these sheets he filed monthly reports to the sales tax division.

The following is a complete copy of the weekly summary of total sales covering the period from July 14th to July 19th inc. 1958. The original, written on a plain sheet of paper 8 x 5½" in size, was admitted in evidence.

July 14 - 19 — 1958

| | |
|---|---|
| 3680 | 280 |
| 3800 | 390 |
| 4340 | 170 |
| 4750 | 411 |
| 6680 | 466 |
| 5910 | 347 |
| 291.60 | 20.64 |
| 20  64 | |
| 311.24 | |
| 29  29 | |
| 281.95 | |

The taxpayer testified that his records were kept in this manner for years and that the figures were taken from the daily tapes. The sheet contained no explanation of the meaning of the figures thereon, but the taxpayer testified that the first column represented the total ten cent draught beer sales, and that the second column represented the total miscellaneous sales during the week. The item of $29.29 represented sums paid out. Sheets in similar form, covering the period from March 3, 1958 to Feb. 28, 1959, were also admitted in evidence.

The taxpayer described the method employed in handling the sales in the restaurant. The waitresses registered on the cash register sales made by them, not necessarily immediately after the completion of the sale. At times they accumulated a dollar or two in their pockets before placing it in the cash register. At times change accumulated on top of the cash register before being registered. If a waitress ordered four or five glasses of beer to serve four or five persons, the aggregate amount of the sales, forty or fifty cents, would ordinarily be registered, and not four or five ten cent items. On the other hand if the bartender collected thirty cents for three glasses of beer from three individuals seated at the bar, the amount collected would be registered as three items of ten cents each.

R. S., 1954, Chap. 17, Sec. 29 requires the taxpayer to preserve his records for three years, and Regulation #5 requires the preservation of records, including cash register tapes, for the same period of time. The tapes upon which the sales were registered in this case, however, were kept by the taxpayer for a month or two and were then thrown out. The assessor's office was thus unable to make an examination of the tapes to determine whether the extent of the ten cent sales could be ascertained therefrom. At the time of inspection the only records of sales then available for examination were the weekly sheets mentioned above. We

hold as a matter of law that these sheets were not adequate to enable the agent of the assessor to determine whether or not the taxpayer was primarily engaged in making sales at retail for ten cents or less.

State Street Cafe, Inc. operates a restaurant on High Street in Portland. David Cremonese, President and Treasurer of the taxpayer testified that his establishment sold little food. The business consisted largely of sales of beer. The sale prices of the beer were ten, fifteen, and thirty-five cents. Two cash registers were operated side by side. One was used for ten cent sales and the other for sales over ten cents. Neither register was equipped with a tape. The registers were aptly described as operating on the principle of a speedometer. A reading of each register was taken each morning and evening. The totals on each register were taken each day and were turned over to the taxpayer's bookkeeper, together with paid bills. From these totals and paid bills a record was made in the regular bookkeeping system. The daily readings were added up once a week. He also testified that if he sold more than one glass of beer at the same time, he would register the total amount of the sale, and that seventy-five per cent of his total sales was of ten cent glasses of beer. The witness did not understand that the so-called multiple sales provisions of the sales tax law applied to the sale of beer. Taxpayer's bookkeeper and accountant testified that he made a regular monthly visit to the taxpayer's place of business and that he also made one or two other calls during the month. The daily slips were picked up by him during these calls. He testified that he segregated the paid outs so that he could keep statistics on the type of purchases, whether of beer, food, or other taxable or nontaxable purchases. The cash receipts were prepared on a daily basis, totaled by the week as taxable or nontaxable, and then entered in taxpayer's book kept by the accountant. The daily slips turned over to the bookkeeper were not offered in evidence, and the only record offered was

the book which contained the entries by the accountant from the daily totals on the slips turned over to him. This book covered the entire period included in the deficiency assessment, and shows receipts and disbursements for each month during that period. The book contains a separate column for disbursements for beer, payroll, food, supplies, fuel, lights, rent, etc. One column was used to enter the record of sales.

The following is a copy of the entries of sales for the month of November, 1957, appearing in one vertical column in the original book but arranged for convenience in this opinion in two columns:

| | SALES | | | TAXABLE | |
|---|---|---|---|---|---|
| Nov. | 1-2 | 305.10 | 11-2 | 119.20 |
| | 4-9 | 647.75 | 9 | 260.50 |
| | 11-16 | 630.40 | 16 | 251.25 |
| | 18-23 | 646.35 | 23 | 256.35 |
| | 25-30 | 655.80 | 30 | 266.90 |
| | | 2885.40 | | 1154.20 |
| | | 1731.20 | | |
| | | 1154.20 | | |
| | 3% | 34.63 | | |

Entries in this column were in substantially the same form throughout the entire taxable period, with the exception of the months of October, 1957, the months of July, September, October, November, and December, 1958, and the month of January. In October, 1957, weekly totals making up the item corresponding to the unidentified and unitemized total of $1731.20 in the copy set forth above were listed under the words "10 cent register." In July and September, 1958, these weekly totals were labeled "nontaxable." In months of October and November the word "beer" was added to the

word "taxable" as it appears in the copy above set forth, and in November and December, 1958, the word "ten cent" preceded the figures corresponding to the figures 1731.20 as set forth above. In the final month of the tax period, January, 1959, the method of entry of sales was changed. In this month the weekly total of sales was carried in three columns marked as follows: "non tax," "tax," and "total."

The entries made by the accountant in the book of record are no more than ledger entries taken from daily slips furnished by the taxpayer. These slips, although not in evidence in the case, were taken from machine made unitemized totals on two registers. No sales slips, or other records except those mentioned herein, were used or kept by the taxpayer to substantiate his claim that it was primarily engaged in making sales of personal property at retail for ten cents or less. However sufficient the records in this case may be for other purposes, they are not adequate to establish the fact that the taxpayer was engaged in making such sales.

Under the provisions of R. S., 1954, Sec. 5 as amended by P. L., 1957, Chap. 402, Sec. 3, a retailer must add a sales tax on the price of all articles sold for fifteen cents or more. Although a taxpayer is not authorized to add the tax to sale prices of fourteen cents or less, nevertheless he is liable to pay a tax on such items. *W. S. Libbey Co.* v. *Johnson,* 148 Me. 410, 94 A. (2nd) 907. However, if he brings his case within the provisions of that part of Sec. 3 relating to sales of personal property at retail for ten cents or less, no tax may be imposed on the sale of articles within that category. No claim is made by any taxpayer that the assessment of the sales or use tax, penalty, or interest was improperly computed if his case did not come within those provisions. Having determined that the taxpayer in each of these cases has not kept adequate records in accordance with the requirements of law, we therefore conclude that the deficiency

assessment of the tax, penalty, and interest was proper in each case.

In view of our conclusions it is unnecessary to examine any other issue in these cases. However, some considerable disagreement arose in the argument of the cases as to whether or not the sale of beer comes within the meaning of the so-called multiple sale provision of Sec. 5. R. S., 1954, Chap. 17, Sec. 5, and amendments thereto, provide that when several articles are purchased together at the same time, the tax shall be computed on the total amount of the several items. Such a transaction is commonly known as a multiple sale. Under the rules and regulations of the State Liquor Commission, licensees may serve only one drink or one bottle to a person at one time. This rule does not, however, preclude one person from paying the entire price charged for several drinks when but one of those drinks is served at the same time to each of several persons. A novel question then arises as to whether or not the taxpayer must add a tax to the amount of the entire price paid if such price is within the brackets requiring the collection of a tax by the retailer.

During the period covered by the tax assessment in these cases, a retailer was obliged to collect the designated tax in the event that a sale exceeded fourteen cents. A retailer not primarily engaged in the sale of articles at retail for ten cents or less was obliged to collect the necessary tax upon the sale of one or more items sold at the same time when the aggregate price exceeded fourteen cents, whether the sale was of beer or other articles. It is only when the taxpayer is primarily engaged in the retail sales of articles of ten cents or less, and keeps adequate records, that he is not obliged to collect a tax on multiple sales insofar as such sales are made up of items of ten cents or less. When an inspection of the taxpayer's book is being made to determine whether he is primarily engaged in the sale of articles

of ten cents or less, multiple sales broken down into items of ten cents or less are to be considered as sales at the price appearing in the breakdown. However, in such a situation, if the taxpayer wishes such items to be considered as sales of ten cents or less, he must be able to demonstrate by his records that a sale which appears on the face of the record to require the collection of a tax is actually made up of sales of ten cents or less.

The entry in each case will be:

*Appeal from Superior Court sustained, without costs.*

*Case remanded to the Superior Court for a decree denying the appeal to that Court and sustaining the assessment of the tax, penalty, and interest.*