FARRAR BROWN COMPANY
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Cumberland.    Opinion, March 2, 1965.

*Jensen and Baird,*
  by *Raymond E. Jensen* and
    *Robert W. Donovan,* for Plaintiff.

*Jon R. Doyle, John W. Benoit,*
  *Ralph W. Farris, Asst. Attys. Gen.,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, MARDEN, JJ. SIDDALL, J., sat, but retired before rendition of opinion.

TAPLEY, J.    On appeal.    Plaintiff, Farrar Brown Company, is registered as a retailer under the Maine Sales and Use Tax Law.    It is primarily a wholesaler of automotive supplies and general merchandise.    It operates 8 branches in addition to its main office located in Portland.    In March of 1960 the State Tax Assessor made a deficiency sales tax assessment against Farrar Brown Company and later in June of 1960, after a hearing on a petition for reconsideration, the Tax Assessor reduced the amount of the assessment to $861.52.    The plaintiff appealed the reduced assessment to the Superior Court, within and for the County of Cumberland.    The case was heard before a single justice who found for the defendant in the total sum of $180.36, with interest to date of payment.    Both parties seasonably appealed.    Subsequently Farrar Brown Company, after notice to the attorneys for the Tax Assessor, withdrew its appeal.    The case is before us on the appeal of the defendant.

The real issue in this case is whether the Tax Assessor may make a deficiency assessment covering sales for a 23-month period based on an audit of sales during 4 months of the period when the taxpayer had records for the entire 23-month period and made such records available for audit. The plaintiff from its main office and its 8 branch stores received approximately 1000 invoices each day.    They were

processed and filed. Some of them contained taxable items and others did not. The auditors for the Tax Assessor's Department audited the records for August, September, October and November of 1959. The procedure the auditors employed was to check invoices and other records representing sales for the 4-month period. From an examination of these invoices and records they totaled the number of what they considered to be errors in taxable sales and then applied the total alleged errors against the gross sales volume for the 4-month period and determined a margin of error of .0089%. This margin of error was applied to a 23-month period. The application of this margin of error determined the amount of deficiency tax claimed to be due. The margin of error was projected over a period of 19 months "on the theory of ratio." This was the formula used and applied for the purpose of determining the amount of the deficiency tax assessment.

In considering this method of determining a deficiency assessment the presiding justice said:

> "These statutes, by implication, indicate that a deficiency tax assessment shall be determined on the basis of the records required to be kept by every retailer, and if necessary, on the basis of evidence gathered at hearings. Farrar Brown Co. has such record requirements. There is no provision for assessment by formulae and it is a general rule that taxing statutes will be strictly construed. The Tax Assessor would need specific authority to make an assessment based upon his 'margin of error' formula. Adoption of a rule authorizing a 'margin of error' assessment would seem to be inconsistent with legislative intention.

> "I am not satisfied by the testimony that authorized representatives of the parties to this litigation understood, agreed or stipulated that a margin of error, if any uncovered in an audit of a four-month test period would apply to an addi-

tional twenty-month period resulting in a two-year tax deficiency assessment."

The ruling of the presiding justice is under attack by the defendant.

"The Court erred in finding that the four-month test period used by appellant to determine tax liability could not be projected over or used as a basis for the entire period of the assessment."

The justice below also ruled:

"I am satisfied that the plaintiff has maintained its records in accordance with applicable regulations."

The defendant in his statement of points on appeal takes issue by stating:

"The Court erred in finding that the records of the plaintiff were of the kind and form prescribed by Revised Statutes 1954, Chapter 17, Section 29."

The statutory provisions pertinent to the issues in this case are:

*"Deficiency assessment*

"After a report is filed under chapters 211 to 225, the Tax Assessor shall cause the same to be examined, and may make such further audits or investigations as he may deem necessary and if therefrom he shall determine that there is a deficiency with respect to the payment of any tax due under chapters 211 to 225, he shall assess the taxes and interest due the State, - - - -." Chap. 17, Sec. 20, R. S., 1954 (36 M.R.S.A., Sec. 1955).

*"Arbitrary assessment*

"If any person shall fail to make a report as required, the Tax Assessor *may make an estimate of the taxable liability of such person from any information he may obtain, and according to*

*such estimate so made by him, assess the taxes, interest and penalties due the State from such person, - - - - ."* Chap. 17, Sec. 19, R. S., 1954 (36 M.R.S.A., Sec. 1954). (Emphasis supplied.)

*"Jeopardy assessment*

"If the Tax Assessor finds that a person liable for a tax designs quickly to depart from this State or to remove his property therefrom, or to conceal himself or his property, or to discontinue business, or to do any other act tending to prejudice or to render wholly or partially ineffective proceedings to collect such tax, unless such proceedings be brought without delay, the Tax Assessor shall cause notice of such finding to be given such person, together with a demand for an immediate report and immediate payment of such tax. If report and payment are not made upon demand, the Tax Assessor *may make an estimate of the taxable liability of such person, from any information he may obtain, and according to such estimate, assess the taxes and interest due the State from such person. - - - - ."* (Emphasis supplied.) Chap. 17, Sec. 21, R. S., 1954 (36 M.R.S.A., Sec. 1956).

*"Examination of records and premises*

"The Tax Assessor, whenever he shall deem it expedient, may make or cause to be made by any employee of the Tax Assessor engaged in the administration of chapters 211 to 225, an examination or investigation of the place of business, the tangible personal property, and the books, records, papers, vouchers, accounts and documents of any retailer. It shall be the duty of every retailer and of every director, officer, agent or employee of every retailer to exhibit to the Tax Assessor or to any such employee of the Tax Assessor, the place of business, the tangible personal property, and all of the books, records, papers, vouchers, accounts and documents of the said retailer, and to facilitate any such examination or investigation so far

as it may be in his or their power to do so. - - - - ."
Chap. 17, Sec. 25, R. S., 1954 (36 M.R.S.A., Sec.
1903).

*"Records or retailers*

"Every retailer shall keep records of his sales,
- - - the kind and form of which shall be adequate
to enable the Tax Assessor to determine the tax
liability. - - - ." Chap. 17, Sec. 29, R. S., 1954 (36
M.R.S.A., Sec. 2061).

Plaintiff corporation is primarily engaged in the whole-
sale business of selling automotive parts and general mer-
chandise. Sales at wholesale comprise 99% of plaintiff's
business. It operates 9 places of business located through-
out the State of Maine. The type of merchandise and auto-
motive equipment it sells varies from time to time — some
new items are taken on and others are discontinued. The
record describes in detail the method of operating the busi-
ness. The invoices reflecting the sales, as to kind of mer-
chandise, price, whether items are taxable or not and re-
sale certificates, are kept for a 5-year period. They were
all available for audit. When the auditors arrived the rec-
ords were made available to them. In making the audit
they were faced with a tremendous number of invoices and,
after a few weeks of work, they decided that time would
not permit the analysis of each invoice and other pertinent
records. In order to facilitate the audit they made a judg-
ment as to how much tax was due, as a deficiency assess-
ment, by applying the percentage of error they found to
exist in the 4-month period to the remaining 19 months.

Plaintiff contends there is no statutory authority for the
audit procedures as were applied in the instant case. A
review and study of the sections of statute pertaining to
audits for determination of tax liability fail to show any
statutory authority to employ the auditing practice as ob-
tains here. The Legislature did, however, provide that if a

person fails to make a report to the Assessor, he may *estimate* the taxable liability from any information he may obtain and assess taxes on such procedure, Chap. 17, Sec. 19, R. S., 1954 (36 M.R.S.A., Sec. 1954), or the Assessor may determine tax liability *by estimate* under other circumstances not applicable to this case, Chap. 17, Sec. 21, R. S., 1954 (36 M.R.S.A., Sec. 1956). Most significant is the fact that under the section providing for further audit or investigations to determine a deficiency tax there is no authority to make a determination on the basis of the projection of a *margin of error* based upon a test period audit.

Farrar Brown Company is basically a wholesaler. Its annual gross sales, approximating $2,000,000, are produced from the sale of 50,000 different types of items. The plaintiff is subject to a tax on those items which it sells at retail. Most of the business is done through customers' retail sales certificates which demonstrate the fact that the customer has purchased the merchandise for resale, provided the certificate is "taken in good faith from a person engaged in selling tangible personal property who, at the time of purchase, intends to sell the property in the regular course of business or cannot then ascertain whether it will be sold or not," and, in addition, the seller satisfies other regulatory requirements pertaining to the resale certificate (Regulation #1). When the wholesaler complies with the requirements of Regulation #1 the resale certificate stands as evidence of no tax liability on the personal property described in the certificate. All resale certificates are on file at the main office and customers' invoices are checked against the resale certificates. An audit to determine tax would require a check of the invoice against a resale certificate. There are some circumstances where a direct retail sale is made but these situations are unusual and not many in number. The business is fluid and flexible in types and lines of merchandise sold by the plaintiff. Good business

policies require frequent changes in the types and character of the merchandise.

There is a marked distinction between the application of the sales and use tax law against a wholesaler as compared with a retailer. The wholesaler is not liable for a sales tax on any tangible personal property sold for resale but only when sold by the wholesaler at retail. In order to facilitate the determination of tax liability, the State Tax Assessor has issued Regulation #1 relating to the sale of taxable personal property for resale. The seller is relieved of the burden of proof "if he requires from his purchaser a resale certificate in accordance with the provisions of this regulation."

The plaintiff, being to all intents and purposes, a wholesaler, operated its business through the use and effect of resale certificates. It had on file in its main office 2000 resale certificates. The wholesaler is charged with a tax liability on all retail sales excepting those, of course, which are tax exempt. A test period applied to the records of a strictly retail business, where taxable items are more uniform and constant, would, no doubt, reflect a more accurate result.

The defendant contends that the presiding justice erred in finding that the records of the plaintiff were of the kind and form prescribed in Chap. 17, Sec. 29, R. S., 1954 (36 M.R.S.A., Sec. 2061) which reads in part:

"Every retailer shall keep records of his sales, - - - the kind and form of which shall be adequate to enable the tax assessor to determine the tax liability."

The Tax Assessor does not claim that the books of account, bills, receipts and invoices were not kept or were not made available to the Assessor.

The statutory authority for a deficiency assessment is found in Chap. 17, Sec. 20, R. S., 1954 (36 M.R.S.A., Sec. 1955) wherein the Assessor is authorized to "make such further audits or investigations as he may deem necessary." There is no language in this section authorizing an audit by taking a test period, determining a margin of error therefrom and applying the percentage of error to the remaining period under investigation, thereby establishing a tax liability. It is reasonable to deduce that had the Legislature intended to authorize a determination of a deficiency tax by spot-check test period or projection of a "margin of error" it would have so provided in the same general manner as it did for *estimates* under Chap. 17, Secs. 19-21, R. S., 1954, (36 M.R.S.A., Secs. 1954-1956).

> "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear impact of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen."
>
> *Gould* v. *Gould*, 245 U. S. 151, 153.

> " - - - - We find no justification in the law for making assessment against vendors according to a flat rate, a weighted average percentage or any mathematical probabilities."
>
> *State* v. *Evatt*, 56 N. E. (2nd) 265, 281 (Ohio).

There are factual similarities between the case at bar and *State* v. *Mims*, 30 So. (2nd) 673 (Ala.) wherein *Mims*, under the Sales Tax Act, was charged with a final tax assessment. There was much to be desired in *Mims'* bookkeeping methods but they were sufficient to show sales and tax exempt items. The examiners audited a 13-months' period, finding that the taxpayer was 56% correct in his returns and was, therefore, 44% deficient. The 44% deficiency was

applied to the remaining time of the 5-year period and in this manner the tax was determined. The court said, on page 676:

> "As we view it, to hold for the State we must conclude, without proof to that effect, and notwithstanding Mims' testimony to the contrary, that because there was an error for the period of thirteen months, let it be said for 44%, that a like error was committed for the other years here involved, and that upon such percentage basis his assessment should be increased.

> "After a careful study of this record - - - we have concluded that such a holding would not be here justified."

There are no statutory auditing procedures prescribed excepting in Sec. 19 (Sec. 1954) and Sec. 21 (Sec. 1956) *supra,* where the Legislature has specifically conferred the right to base a tax liability on estimates. The two instances where the Legislature has authorized estimates are (1) where a taxpayer fails to make a report; and (2) where the departure from the State of a taxpayer is imminent or he removes his property therefrom, conceals himself or his property, or discontinues business. It is understandable under these circumstances that the Legislature deemed it necessary for a proper and efficient administration of the Sales and Use Tax Law to clothe the Assessor with the authority and power to determine tax liability by estimate. Under all other conditions the Legislature requires an audit based upon an examination of taxpayers' records and not the establishment of a tax liability by surmise and conjecture. Due to the fact that the plaintiff is engaged in a wholesale and not a retail business; that it follows from the nature of the business and the testimony that the lines of merchandise which it sells frequently change; that resale certificates play a major part in the determination of tax liability, it would appear that a deficiency tax

assessment under Sec. 20 (Sec. 1955) *supra* requires an examination of all the records.

We understand and appreciate the problem faced by the auditors in such a time-consuming task as they were confronted with but according to our analysis of the sales and use tax statute in its entirety, we find no alternative. This may constitute a serious administrative problem time-wise for the Tax Assessor's Department but it is one for the Legislature to consider and not the courts.

The defendant further contends that he had a right to make a test period audit because the plaintiff did not keep "adequate" records.

> "Every retailer shall keep records of his sales, - - - the kind and form of which shall be adequate to enable the Tax Assessor to determine the tax liability." Sec. 29 (Sec. 2061) *supra*.

The books, records and other documentary evidence are required to be kept by the retailer in order that the Tax Assessor, on examination, may determine tax liability. These records not only show gross sales but also reflect the credit due the retailer on exempt sales. *Scott Paper Co.* v. *Johnson*, 156 Me. 19.

The defendant cites *Bouchard, et al.* v. *Johnson*, 157 Me. 41 as to the requirement of keeping "adequate" records by the retailer. *Bouchard* is not applicable for two reasons: (1) it concerns a taxpayer who is engaged only in retail business wherein resale certificates are not involved; and (2) the issue being the number of retail sales of 10c or less, this court held the taxpayer's records were inadequate to show that the taxpayer was primarily engaged in the making of sales for 10c or less. The word "adequate" as used in *Bouchard, supra,* means the records were not sufficient in substance to show the number and price of sales. There was a complete lack of sufficient, substantive records from

which tax liability could be determined. This is not the situation in the instant case. We conclude that the records of the plaintiff were adequate to satisfy the requirements of Sec. 29 (Sec. 2061) *supra.*

There is contention on defendant's part that plaintiff corporation waived a complete audit of the records but we find evidence that a complete and full audit was not waived.

The justice below found (1) that the plaintiff kept adequate records; (2) that plaintiff did not consent to the employment of the "margin of error" audit; and (3) that there is no statutory authority for the application of the theory of "margin of error" to determine tax liability in order to make a deficiency assessment under Sec. 20 (Sec. 1955) *supra.*

Chap. 17, Sec. 33 (36 M.R.S.A., Sec. 1958) provides in part:

> "The decision upon all questions of fact shall be final."

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52 (a) M.R.C.P.

See *Harriman* v. *Spaulding,* 156 Me. 440.

The findings of the justice below are correct.

The entry will be:

*Appeal denied.*