THE STATE OF NEVADA DEPARTMENT OF TAXATION,
APPELLANT, *v.* MASCO BUILDER CABINET GROUP DBA
QUALITY CABINETS OF NEVADA, RESPONDENT.

No. 55183

October 20, 2011 265 P.3d 666

*Catherine Cortez Masto*, Attorney General, and *Blake A. Doerr*, Deputy Attorney General, Carson City, for Appellant.

*Justice Law Center* and *Bret O. Whipple*, Las Vegas, for Respondent.

Before SAITTA, C.J., DOUGLAS and HARDESTY, JJ.

## OPINION

*Per Curiam:*

In this appeal, we consider two issues regarding a taxpayer's request for a refund from the Nevada Department of Taxation. First, we consider whether the Nevada Tax Commission improperly substituted its own judgment for that of an administrative law judge in reversing the judge's determination that the taxpayer was entitled to a refund. Second, we consider whether the statute of limitations governing the time within which a taxpayer must file a formal refund claim should be tolled when the Department of Taxation has led the taxpayer to believe that a formal filing was unnecessary. Because we conclude that the Tax Commission improperly substituted its own judgment for that of the administrative law judge, we affirm the district court's decision to grant the taxpayer's petition for judicial review. Additionally, we conclude that, under the facts of this case, equitable considerations warrant a tolling of the statute of limitations, and we affirm the district court's decision to grant the taxpayer its entire refund request.

## FACTS

Respondent Masco Builder Cabinet Group is a nationwide cabinet-manufacturing company that both sells its cabinets in retail showrooms and installs them in houses as part of construction contracts.[1] Pursuant to Nevada's tax code, Masco must remit sales tax to appellant, the Nevada Department of Taxation, for each retail sale it makes, and it must remit use tax for each construction contract it enters into. NRS 372.105; NRS 372.185; NAC 372.200(1). Both sales tax and use tax are based upon the same tax rate, but sales tax is calculated as a percentage of the retail sales price of Masco's cabinets, whereas use tax is calculated as a percentage of Masco's cost to acquire the cabinet components. *Id.* Thus, from a tax perspective, it is more beneficial for Masco to enter into a construction contract than to make a retail sale.

In November 2003, Masco acquired Root Industries, a Reno-based company that engaged largely in retail sales of cabinets.[2] Masco management retained Root's personnel to handle Masco's northern Nevada-based business. In so doing, Root kept its same computer system and accounting programs, which were designed for a retail sales company.

When Root's accounting program generated invoices to send to its retail sales customers, the program automatically added the applicable tax on a line labeled "sales tax." For example, prior to its acquisition by Masco, if Root sold a customer a cabinet for $1,000, Root's personnel would enter the $1,000 retail price into its computer system, and the system would automatically calculate the sales tax. Thus, assuming an applicable tax rate of 7.5%, an invoice for $1,075 would be generated, which Root would send to the customer.

Masco's construction contracts with its customers, however, were structured differently. Under its contracts, Masco's customers agreed to pay Masco a lump-sum amount in exchange for Masco providing and installing cabinets, and Masco agreed to be responsible for paying any applicable taxes. Thus, when Root's personnel began generating invoices for Masco's lump-sum contracts, they had to "back into" the contract price so that when the computer

---

[1]As opposed to a retail sale, which involves the sale of tangible personal property, *see* NRS 372.105, a construction contract is a "contract for . . . affixing a structure or other improvement on or to real property." NAC 372.190(2).

[2]The record indicates that Root was acquired in November 2003 by Texwood Industries, a Las Vegas-based cabinet company. As such, Texwood was the company that the Tax Department initially audited and that requested the refund at issue in this appeal. While the audit was ongoing, Masco acquired Texwood, at which point Masco became the affected taxpayer. For the sake of clarity, this opinion refers solely to Masco as the affected taxpayer.

system added on the "sales tax," the total invoice still equaled the lump-sum amount that the customer had contractually agreed to pay. For example, if a customer agreed to pay Masco a lump sum of $1,000 for installing a cabinet, and Masco agreed to be responsible for any resulting taxes, Root's personnel would enter the contract price of $930.24 into the computer system, which, after automatically calculating 7.5% "sales tax," would generate a $1,000 invoice for the customer. Root would then remit the calculated $69.76 "sales tax" to the Tax Department on behalf of Masco.[3]

In summer 2006, the Tax Department began an audit of Masco, which was to cover the periods of May 2003 through April 2006. While conducting the audit, the Tax Department's auditor and Masco's management discovered Root's accounting procedures. Both the auditor and Masco agreed that, by backing into the contract prices in this manner, Root had arguably been remitting sales tax to the Tax Department when it should have been remitting use tax. Aggregated over thousands of invoices and several years, the difference between remitting sales tax and use tax on Masco's contracts was substantial. The auditor and Masco agreed preliminarily that Masco might be entitled to a refund for the amount it arguably overpaid and that the auditor would consider the issue of Masco's potential refund within the overall context of his audit.

By statute, a taxpayer seeking a refund must file a formal refund claim with the Tax Department within three years of when the taxpayer's purported overpayment occurred. NRS 372.635(1); NRS 372.650. Similarly, if an audit reveals a tax deficiency on the part of an audited taxpayer, the Tax Department may assess a deficiency on the taxpayer only for underpayments that occurred within three years prior to when the actual deficiency assessment is made. NRS 360.355(1). Because both the auditor and Masco anticipated that the audit would be lengthy, the Tax Department requested that Masco sign a waiver of the statute of limitations, in essence asking Masco to agree that the Tax Department could assess a deficiency for any underpayments that the audit might uncover going back to May 2003. Having agreed with the auditor that its refund request would be dealt with in the context of the audit, Masco signed the Tax Department's waiver in June 2006 with the understanding that the waiver would also maintain the timeliness of its own refund request for any overpayments of sales tax during that

---

[3]If, in this example, Masco's cost of acquiring the cabinet components was $500, Masco should have actually been remitting $37.50 in use tax. Root's method of backing into the tax figure, however, caused it to remit tax on behalf of Masco for amounts comprising the difference between $500 and $930.24—amounts such as labor, overhead, and profit, which are not subject to use tax. NRS 372.185.

same period. Based upon this understanding, Masco did not file a formal refund claim.

Pursuant to Tax Department policy, its waiver forms only extend the statute of limitations for three months at a time. As such, Masco signed several subsequent waivers between mid-2006 and mid-2007. By August 2007, the audit had been completed, but during this same time, the auditor left his job at the Tax Department without telling Masco and without having notified Masco that the audit had been completed. Realizing that the most recent waiver was about to expire, Masco attempted to contact the Tax Department, but its calls were not returned. In October 2007, after the most recent waiver had already expired, Masco was able to speak with the new auditor, who informed Masco that the Tax Department was denying its refund request.

Two months later, Masco received the Tax Department's deficiency assessment, which made no mention of Masco's refund request or why it was being denied. Masco then filed a formal refund claim in January 2008 as part of a petition for redetermination. At a hearing before an administrative law judge (ALJ), the Tax Department maintained that Masco was not entitled to a refund because it had been acting as a retail seller under the contracts in question, not as a construction contractor. It argued additionally that, even if Masco were entitled to a refund, any overpayments it may have made more than three years prior to January 2008 were now time-barred.

The ALJ disagreed with the Tax Department and determined that Masco's contracts with its customers were construction contracts, not retail contracts, which thereby entitled it to a refund on the mistakenly overpaid sales tax. The ALJ also determined that Masco was entitled to a refund for the entire audit period in spite of its late filing of a formal refund claim because it had reasonably relied on the auditor's representation that he would consider Masco's refund request within the overall context of the audit.

The Tax Department then appealed the ALJ's determinations to the Tax Commission. After a short hearing, the Tax Commission reversed the ALJ's determination that Masco was entitled to a refund. Without addressing Masco's reliance on its agreement with the auditor, the Tax Commission also concluded that Masco's failure to timely file a formal refund claim would have rendered a portion of its refund request time-barred.

Masco then filed a petition for judicial review. The district court granted Masco's petition on the basis that the Tax Commission had improperly substituted its own judgment for that of the ALJ. In so doing, the district court reinstated the ALJ's determination that Masco was entitled to a refund and that the time period for the refund should cover the entire audit period. This appeal followed.

## DISCUSSION

On appeal, the Tax Department makes two arguments. First, it argues that the Tax Commission did not improperly substitute its own judgment for that of the ALJ in considering whether Masco should be entitled to a refund. It contends that, instead, the ALJ's determination was clearly erroneous and that the Tax Commission therefore acted properly in denying Masco's refund request. Second, the Tax Department argues that, even if Masco is entitled to a refund, it is barred from obtaining a refund for any overpayments made more than three years prior to January 2008—the date when it filed its formal refund claim.

For the reasons given below, we reject both of the Tax Department's arguments. The ALJ's determination that Masco was entitled to a refund was supported by substantial evidence in the record and was therefore not clearly erroneous. Additionally, we reject the Tax Department's contention that Masco's late filing of a formal refund claim has rendered a portion of its refund request time-barred. Under the doctrine of equitable tolling, the applicable statute of limitations was tolled from the time Masco signed the Tax Department's first waiver in June 2006 with the understanding that its refund request would be considered within the overall context of the audit. We therefore affirm the district court's order in which it granted Masco's petition for judicial review and reinstated the ALJ's determinations.

### Standard of review

When reviewing an administrative agency's decision, our standard of review is the same as that of the district court. *Garcia v. Scolari's Food & Drug*, 125 Nev. 48, 56, 200 P.3d 514, 519-20 (2009). We review questions of law de novo, and with regard to factual issues, we are limited to determining whether the agency's decision is supported by substantial evidence. *Id.* at 56, 200 P.3d at 520. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* If the agency's decision is supported by substantial evidence, we are prohibited from substituting our own judgment for that of the agency. NRS 233B.135(3); *Garcia*, 125 Nev. at 56, 200 P.3d at 520. Only under limited circumstances, such as when an agency's decision is ''[c]learly erroneous,'' may we reverse the agency's factual determinations. NRS 233B.135(3)(e).

Because the Tax Commission's decision in this case was based on its review of the ALJ's findings, it was governed by the same standard of review as this court's analysis. NRS 360.390(2). That is, if the ALJ's findings were supported by substantial evidence,

the Tax Commission was prohibited from substituting its own judgment for that of the ALJ. NRS 233B.135(3). Thus, our inquiry on appeal is whether the Tax Commission improperly substituted its own judgment for that of the ALJ or if, instead, it properly overturned a clearly erroneous decision by the ALJ.

*The Tax Commission improperly substituted its own judgment for that of the ALJ*

Both Masco and the Tax Department agree that Masco's tax status is dictated by its contractual undertaking. *See State, Dep't Taxation v. Kelly-Ryan, Inc.*, 110 Nev. 276, 283-84, 871 P.2d 331, 336-37 (1994) (concluding that a taxpayer was obligated to remit use tax based upon the contractual responsibilities that the taxpayer undertook); *Maecon, Inc. v. State, Dep't of Taxation*, 104 Nev. 487, 489-90, 761 P.2d 411, 412 (1988) (same). In other words, if Masco contractually agreed to sell its customers tangible personal property in the form of cabinets, it was acting as a retail seller and therefore properly remitted sales tax. Conversely, if Masco contractually agreed to install cabinets into its customers' houses and to provide the cabinets necessary for doing so, it was acting as a construction contractor and therefore should have been remitting use tax.

In spite of this general agreement, the parties disagree as to what relevance the Root-generated invoices have in determining Masco's status. Masco contends that these invoices, which contained a line-item for "sales tax," were the result of a computer-generated accounting oversight that had no bearing on its contractual undertaking. The Tax Department, on the other hand, contends that these same invoices evince a conscious decision on Masco's part to act as a retail seller.

At the ALJ hearing, Masco produced several contracts that it had entered into with various customers and identified contract language indicative of construction (rather than retail) contracts. It also walked the ALJ through several Root-generated invoices in which Root personnel had taken one of Masco's lump-sum contract prices, entered it into their computer system, and backed into the sales tax figure that was ultimately remitted to the Tax Department.

Based upon Masco's explanation, the ALJ issued a detailed decision in which he determined that Masco had indeed acted as a construction contractor. Specifically, the ALJ based this determination on his belief that each contract in question was, in essence, an agreement between Masco and its customer wherein Masco promised to install cabinets in the customer's house in exchange for a lump-sum price. Because the Root-generated invoices equaled

the lump-sum amounts that Masco's customers had contractually agreed to pay, the ALJ discounted the fact that the invoices contained a specific line for sales tax, downplaying the Tax Department's contention that this line-item evinced a conscious decision on Masco's part to act as a retail seller.

In overturning the ALJ's decision, the Tax Commission failed to address the ALJ's detailed findings and the evidence upon which these findings were based. Specifically, its decision made no mention whatsoever of Masco's contracts, much less why it found them unpersuasive or why it found the ALJ to have been clearly erroneous in relying on them. Nor did its decision articulate why it believed that the Root-generated invoices reflected Masco's choice to act as a retail seller.

Accordingly, we conclude that the Tax Commission improperly substituted its own judgment for that of the ALJ. The ALJ's decision was supported by substantial evidence, as the contracts in question clearly demonstrate agreements between Masco and its customers to provide and install cabinets in the customers' houses in exchange for a lump-sum price. These contracts, combined with Masco's explanation of how the invoices were generated, were more than adequate to support the ALJ's conclusion. *Garcia*, 125 Nev. at 56, 200 P.3d at 520 ("Substantial evidence is evidence that a reasonable mind might accept as adequate to support [a] conclusion."). We therefore affirm the district court's order to reinstate the ALJ's determination that Masco is entitled to a refund.[4]

*The three-year limitations period was tolled when Masco signed the Tax Department's waiver*

Having determined that Masco is entitled to a refund, we next consider whether it is entitled to a refund for the entire audit pe-

---

[4]The Tax Department also contends that Masco is not entitled to a refund because it did not bear the financial burden of the taxes that it over-remitted. *See State, Nev. Tax Comm'n v. Obexer & Son*, 99 Nev. 233, 238, 660 P.2d 981, 984 (1983) ("[NRS 372.630] permit[s] recovery only where the taxpayer himself has borne the financial burden of the tax. If the taxpayer making the claim has collected the tax from his customers, he has suffered no loss or injury, and is not entitled to a credit or refund even if the tax was paid erroneously.").

While we agree with the Tax Department's premise, we disagree with its conclusion. Masco's contracts provided that its customers would pay a lump-sum price and that Masco would be responsible for any resulting taxes. In so doing, Masco may have been able to build into its contract prices an amount that equaled the applicable use tax rate, thereby transferring this burden to its customers. Nevertheless, the fact that it was over-remitting sales tax indicates that Masco was still bearing the financial burden of the difference between what it actually remitted and what it should have been remitting. It is this difference that forms the basis for Masco's refund request.

riod or if, instead, its late filing of a formal refund claim renders a portion of its request time-barred.[5]

A taxpayer is statutorily required to file a written claim for a refund within three years of the purported overpayment. NRS 372.635(1); NRS 372.645; NRS 372.650. Because Masco did not formally file its own written claim until January 2008, the Tax Department contends that Masco is now prohibited from receiving a refund for any overpayments made prior to 2005—in essence, barring it from obtaining a refund for a substantial portion of the initially agreed-upon audit period. Masco, on the other hand, contends that the agreement it made with the Tax Department's auditor and the multiple waivers it signed should have tolled the running of the three-year limitations period. As explained below, we agree that the limitations period should have been tolled, and we conclude that Masco is entitled to a refund for overpayments encompassing the entire audit period.

Equitable tolling operates to suspend the running of a statute of limitations when the only bar to a timely filed claim is a procedural technicality. *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 826, 673 P.2d 490, 492 (1983) ("We therefore adopt the doctrine of equitable tolling . . . ; procedural technicalities that would bar claims . . . will be looked upon with disfavor."); *Lantzy v. Centex Homes*, 73 P.3d 517, 523 (Cal. 2003) ("This court has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action . . . ."). Even when the claim's untimeliness is due to a procedural technicality, application of the doctrine is appropriate only when " 'the danger of prejudice to the defendant is absent' " and " 'the interests of justice so require.' " *Seino v. Employers Ins. Co. of Nevada*, 121 Nev. 146, 152, 111 P.3d 1107, 1112 (2005) (quoting *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002)).

With this basic framework in mind, we explain why the statute of limitations governing Masco's refund request was tolled. The record demonstrates that the only basis for the Tax Department's argument is a procedural technicality. Specifically, Masco told the Tax Department's auditor that it was requesting a refund, stated its basis for the refund, and the auditor communicated this stance in writing to his supervisors at the Tax Department. Thus, the only shortcoming in Masco's refund request was its failure to send the Tax Department its own letter to the same effect. *Cf. Hansen-*

---

[5]Because neither party has addressed whether Masco should be entitled to a credit, rather than a refund, we refer generically to Masco's "refund." *See* NRS 360.235 ("[A]ny amount determined to be refundable by the Department after an audit must be refunded or credited to any amount due from the taxpayer.").

*Neiderhauser v. Nev. Tax Comm'n*, 81 Nev. 307, 311, 402 P.2d 480, 482 (1965) ("The purpose of the statute requiring the filing of a claim . . . is to enable the agency to investigate the claim and the claimant while the occurrence is recent and the evidence available . . . .").

For similar reasons, the danger of prejudice to the Tax Department is absent. The Tax Department was fully apprised of Masco's basis for its refund request from the inception of the audit, and because it has already denied the request, we assume that it has already fully investigated the matter. As such, tolling the limitations period during the pendency of the audit would have no prejudicial impact on the Tax Department's ability to contest or investigate the matter. *Hansen-Neiderhauser*, 81 Nev. at 311, 402 P.2d at 482.

Finally, the interests of justice require a tolling of the statute of limitations in this case. In applying the doctrine of equitable tolling in the past, this court has looked at several nonexclusive factors to determine whether it would be just or fair to toll the statute of limitations: the claimant's diligence, the claimant's knowledge of the relevant facts, the claimant's reliance on authoritative statements made by the administrative agency, and whether these statements misled the claimant. *Copeland*, 99 Nev. at 826, 673 P.2d at 492 (articulating the doctrine of equitable tolling in the context of an employment-discrimination claim).

When considering these factors within the context of this case, it becomes clear that justice requires the statute of limitations to be tolled. To be sure, Masco is a large company with the apparent resources and wherewithal to investigate whether it might need to formalize its refund request. Nevertheless, given the auditor's assurances that its refund request would be considered within the context of the audit, the Tax Department's conduct effectively lulled Masco into a false sense of security. Moreover, having understood that the viability of its refund request was contingent on the continuing validity of the waivers, Masco diligently attempted to contact someone at the Tax Department to ensure that a new waiver would be signed in time. The fact that a new waiver was not timely signed was solely the result of the Tax Department's failure to return Masco's phone calls and its own disorganization with regard to who was in charge of the audit after the original auditor left the Tax Department. Even after Masco was eventually able to contact someone in the Tax Department, it had to wait another two months to receive an actual deficiency assessment, during which time Masco was essentially left in limbo as to the status of its refund request.

Given that the Tax Department actively participated in and contributed to Masco's delay in filing its formal refund claim, the interests of justice require the statute of limitations to be tolled. The

Tax Department's role in this delay began at the time the auditor agreed to consider Masco's refund request within the context of the audit, which was at the time when Masco signed the June 2006 waiver. Its role in perpetuating this delay continued until Masco received the actual deficiency assessment in December 2007, and as such, the three-year limitations period was equitably tolled during this period. Because Masco filed its formal refund request within a month of receiving the deficiency assessment, its request was timely with regard to any overpayments that occurred 2 years and 11 months prior to June 2006.[6]

## CONCLUSION

Substantial evidence supported the ALJ's conclusion that Masco acted as a construction contractor and not as a retail seller. Accordingly, the Tax Commission improperly substituted its own judgment for that of the ALJ in reversing the ALJ's determination that Masco was entitled to a tax refund. Furthermore, because the Tax Department played an active role in causing Masco's formal refund claim to be untimely, the statute of limitations was equitably tolled during the time in which the Tax Department hindered Masco from filing its formal written claim. Accordingly, we affirm the judgment of the district court.

---

[6]Although the audit period began in May 2003, Masco did not acquire Root until November 2003. Because the overpayments at issue occurred in and after November 2003, Masco's formal written claim filed in January 2008 is timely with regard to all of the contested overpayments.