JIM L. SHETAKIS DISTRIBUTING COMPANY, INC., DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF SHETAKIS WHOLESALERS, APPELLANT, v. THE STATE OF NEVADA, DEPARTMENT OF TAXATION, RESPONDENT.

No. 22849

October 22, 1992                    839 P.2d 1315

*Denton & Denton,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *John S. Bartlett,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

Jim L. Shetakis Distributing Co., Inc., d/b/a Shetakis Wholesalers ("Shetakis"), is a wholesaler who sells food and non-food items to hotels, restaurants and other businesses involved in food preparation. The Department of Taxation (Department) conducted an audit of Shetakis for the period of April 30, 1980, through March 31, 1983. The audit was conducted by the use of two "test periods." The Department originally audited the records for eight-day test periods in September 1980, August

1981 and August 1982. Shetakis did not agree with the results of the audit and requested a more expanded audit. The Department then audited seven-day test periods in December 1980, May 1981 and March 1982. The total number of days that were audited in these two test periods was forty-five days. The Department determined, inter alia, that Shetakis failed to collect sales tax on non-food items such as rock salt (which is used as a water softener), waxed paper and foil.[2] On September 2, 1983, a tax deficiency of $27,840.77 (including interest) was imposed against Shetakis.

Shetakis filed a petition for re-determination and two evidentiary hearings were held, one on November 8, 1983, and one on February 28, 1984. The hearing officer denied the petition, which in effect affirmed the tax deficiency. The hearing officer held that the audit test period was customary and reasonable. The officer further held that the rock salt sold to restaurants was properly considered a non-food item, which thus should be taxed, and that foil and waxed paper should be taxed as well—irrespective of the restaurant's ultimate use of the product.

Shetakis appealed to the Nevada Tax Commission, which affirmed the decision of the hearing officer. Shetakis then filed a petition for judicial review. The district court entered an order affirming the hearing officer's decision, holding that the use of the audit test period was fair and reasonable and that the non-food items were taxable.[3] Shetakis appealed. The two issues on appeal are whether the use of an audit test period is allowable and whether certain non-food items sold by Shetakis are taxable.

We agree with the Department's arguments, and for the following reasons, we affirm.

### DISCUSSION

This court's role in reviewing an administrative decision is identical to that of the district court: to review the evidence before the agency in order to determine whether the agency decision was arbitrary or capricious and was thus an abuse of the agency's discretion. Titanium Metals Corp. v. Clark County, 99 Nev. 397, 399, 663 P.2d 355, 357 (1983). The decision of an administrative agency will be affirmed if there is substantial evidence to support the decision. SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987). Substantial evidence is that which

---

[2]The Department also imposed other deficiencies which are not at issue in this case.

[3]Originally, the district court dismissed Shetakis' petition for judicial review. However, on appeal this court issued an order of remand ordering that the case be determined on its merits. Shetakis v. Dep't of Taxation, Docket No. 21101 (December 20, 1990).

"a reasonable mind might accept as adequate to support a conclusion." State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).

NRS 233B.135 provides a statutory standard of review, it reads in relevant part:

> 3.  The court shall not substitute its judgment for that of the agency as to the weight of evidence on a question of fact. The court may remand or affirm the final decision or set it aside in whole in or part if substantial rights of the petitioner have been prejudiced because the final decision of the agency is:
>
> . . . .
>
> (c) Made upon unlawful procedure;
> (d) Affected by other error of law;
> (e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
> (f) Arbitrary or capricious or characterized by abuse of discretion.

## THE AUDIT TEST PERIOD

Shetakis contends that the use of an audit test period is unjustified when the taxpayer has sufficient records to conduct a detailed, daily audit. Shetakis argues that NRS 372.435 allows an estimation to be made only where no return has been filed. NRS 372.435 provides in relevant part:

> 1.  If any person fails to make a return, the department shall make an estimate of the amount of the gross receipts of the person or, as the case may be, of the amount of the total sales price of tangible personal property sold or purchased by the person, the storage, use or other consumption of which in this state is subject to the use tax.

However, under NRS 372.400, the Department has authority to conduct an investigation. NRS 372.400 provides in relevant part:

> 372.400  Recomputation of tax; determination on discontinuance of business.
> 1.  If the department is not satisfied with the return or returns of the tax or the amount of tax required to be paid to the state by any person, it may compute and determine the amount required to be paid upon the basis of the facts contained in the return or returns *or upon the basis of any information within its possession or that may come into its possession* . . . .

(Emphasis added.) The Department asserts three reasons why the

language of NRS 372.400 should be broadly construed to allow an audit using a test period. Without such authority, the Department would then be effectively prohibited from auditing any business which filed returns but which kept no records. Second, in the case of inadequate records, the Department would be unable to assess a tax deficiency beyond what the inadequate records indicated. Third, if the Department was held to estimating deficiencies only where no return had been filed, the Department would be left with no choice but to disallow all claimed exemptions and make the taxpayer prove every exemption.

We agree with the Department. The authority granted the Department under NRS 372.400 is not limited to a simple investigation of the taxpayer's records. Rather, by express statutory language, the Department may use any information which it may come to possess. We interpret this language to mean that the Department may conduct an investigation using any reasonable and fair means.

The Department notes that the Nevada Tax Commission considered available publications on the use of audit sampling techniques and concluded that (1) audit sampling is widely accepted and used; (2) absolute maximum and minimum sample sizes cannot be established due to the individual circumstances present in each case; and (3) reliance must be placed upon the sound judgment of the auditor to select the appropriate audit sample. In the case before us, the Department conducted the audit using the test periods because it considered the technique to be an accepted audit procedure which works well on large audits. Further, the sample renders comparable results to a day-to-day audit using the taxpayer's records. The test period method saves an auditor months of work, especially for a business which, as in this case, has recurring customers who buy things from the taxpayer on a regular basis. Under these circumstances, it would be foolish to audit on a detailed basis because of the consistency of the transactions. The Department considers it a misuse of the public's money to conduct a more lengthy audit under the circumstances presented here.

We are not alone in holding that a test period is reasonable. In Torridge Corporation v. Commissioner of Revenue, 506 P.2d 354 (N.M. 1973), the Commissioner used a "test months" method to determine a tax deficiency. Id. at 357. The court stated that even though the taxpayers had records upon which to base an audit, restricting the Commissioner to the use of the records alone would effectively foreclose any investigation. Id. The court held

that, as a matter of law, the audit techniques employed by the Commissioner were not arbitrary. *Id. See also* Paine v. State Bd. of Equalization, 137 Cal.App.3d. 438 (Ct.App. 1982); Farrar Brown Company v. Johnson, 207 A.2d 406 (Me. 1965); Chartair, Inc. v. State Tax Commission, 411 N.Y.S.2d 41 (N.Y.App.Div. 1978); McDonald's of Springfield, Ohio, Inc. v. Kosydar, 330 N.E.2d 699 (Ohio 1975).

In the case at hand, Shetakis issued an average of 250 invoices per day. Over a three-year period, this totals 195,000 invoices. Shetakis' non-food sales were approximately one percent of its business. Therefore, the Department would be forced to look at 195,000 invoices over the three-year period to find the one percent non-food sales and determine whether particular line items on those invoices were properly exempted from sales tax. This would place an undue burden on the Department and would virtually cripple the Department's ability to conduct an audit in a timely and efficient manner.

We are not unmindful of Shetakis' argument that if a taxpayer keeps accurate and complete records, as is required by NRS 372.735(1), it is entitled to have those records used in an audit. In this case, the Department *did* use Shetakis' records in sampling its business for certain periods of time. In a very practical sense, it is unrealistic for this court to impose the burden on the Department of auditing 195,000 invoices looking for specific line items over a three-year period. It is simply unfeasible and unreasonable to conduct an audit in this manner.

We therefore conclude that the Department may use representative and reasonable test periods in determining if a taxpayer has paid the proper amount of taxes.

## TAXATION OF NON-FOOD ITEMS

Shetakis argues on appeal that it is a wholesaler who does not sell at retail. NRS 372.050(1) defines a retail sale as "a sale for any purpose other than resale in the regular course of business of tangible personal property." A sale of personal property is presumed to be taxable unless proven to be sold for resale under NRS 372.155. NRS 372.155 provides in relevant part:

> [I]t is presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale.

Additionally, NRS 372.160 provides in relevant part:

> A resale certificate relieves the seller from the burden of

proof only if taken in good faith from a person who is engaged in the business of selling tangible personal property . . . and who, at the time of purchasing the tangible personal property, intends to sell it in the regular course of business . . . .

In the case at hand, Shetakis did not obtain resale certificates from its buyers. However, Shetakis argues on appeal that it rebutted the presumption against taxation when it "proved" that the non-food items it sells are resold by its customers. Shetakis contends that the sale of "water softening" rock salt should not be taxed because its customers use the salt for preparation of prime rib. The salt is thus incorporated into the food itself and then "resold" to the restaurant's customers in the form of a meal. Likewise, Shetakis argues that foil, waxed paper, and other paper products it sells, should not be taxed because its customers use these products to package or serve food which is then resold to their customers.

Tax exemptions are strictly construed in favor of finding taxability and that any reasonable doubt about whether an exemption applies must be construed against the taxpayer. Sierra Pac. Power v. Department Taxation, 96 Nev. 295, 297, 607 P.2d 1147, 1148 (1980). Shetakis' sole "proof" that the rock salt which it sold was used as a food product consisted of letters from two of its customers. Given that over the forty-five day test period alone, Shetakis sold nearly $1,000 worth of rock salt, we conclude that letters from two of Shetakis' customers is insufficient to prove that all the rock salt it sold was used in the food preparation process. Shetakis therefore did not rebut the presumption of taxation. Accordingly, we hold that the hearing officer did not err in holding that the rock salt was taxable.

Shetakis also argues that the foil, waxed paper, and other paper products it sold should not be taxed because its customers use these products to package or serve food which is, in turn, resold to their customers. The proof Shetakis offered at the administrative hearing is even scantier than that offered for the rock salt. Shetakis presented a single document from one of its customers which indicated that the customer used the foil for the following: to wrap potatoes for baking, to wrap take out foods, for storage, and to line cooking pans.

We conclude that one document from one customer, which does not specify how much foil ultimately found its way to a customer, does not overcome Shetakis' burden of proving that the foil was purchased by its customers for resale. We therefore hold

that the hearing officer did not err in holding that the remainder of the non-food products which Shetakis sold were taxable.

Accordingly, we affirm the judgment of the district court.