135 Nev., Advance Opinion 44

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA, DEPARTMENT OF BUSINESS AND INDUSTRY, FINANCIAL INSTITUTIONS DIVISION, Appellant, vs. TITLEMAX OF NEVADA, INC., D/B/A TITLEBUCKS, D/B/A TITLEMAX, A DELAWARE CORPORATION, Respondent.

No. 74335



FILED

SEP 26 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a petition for judicial review of an administrative decision. Eighth Judicial District Court, Clark County; Joseph Hardy, Jr., Judge.

*Affirmed in part and reversed in part.*

Aaron D. Ford, Attorney General, Heidi J. Parry Stern, Solicitor General, David J. Pope, Senior Deputy Attorney General, and Vivienne Rakowsky, Deputy Attorney General, Carson City, for Appellant.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Dale Kotchka-Alanes, Las Vegas; Brownstein Hyatt Farber Schreck, LLP, and Patrick John Reilly, Las Vegas, for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

The Nevada Legislature adopted NRS Chapter 604A in an effort to protect Nevada consumers from predatory lending practices related

to certain short-term, high-interest loans such as title loans. A title loan is a loan agreement that charges an annual percentage rate of more than 35 percent and requires the customer to secure the loan by either giving possession of a vehicle that they legally own or by perfecting a security interest in the vehicle. *See* NRS 604A.105(1). Key to this case, Nevada law restricts the duration of title loans, allowing either a 30-day loan that may be extended up to six times in 30-day increments or a 210-day loan. Title lenders offering a 210-day loan are required to structure the loan such that it "ratably and fully amortize[s] the entire amount of principal and interest payable on the loan." NRS 604A.445(3) (2007).[1] Although title lenders may not offer an "extension" on a 210-day loan, NRS 604A.445(3), they are permitted to offer a "grace period"—that is, they may extend the life of the loan but may not charge additional interest. *See* NRS 604A.070 (2007); NRS 604A.210 (2005).[2]

In this case, we must determine whether the Grace Period Payment Deferment Agreement (GPPDA) that respondent TitleMax of Nevada, Inc., marketed as an amendment to its 210-day loan complies with the statutory restrictions on the duration of a title loan. Because the GPPDA required borrowers to make unamortized payments and consequently charged "additional interest," it impermissibly extended the duration of the loan. We therefore conclude the Administrative Law Judge

---

[1]NRS 604A.445 was amended in 2017 and replaced in revision by NRS 604A.5074. 2017 Nev. Stat., ch. 274, § 6.5, at 1441-42. Because the relevant events took place in 2014-2015, we consider the statute as it applied prior to the amendment.

[2]NRS 604A.210 and NRS 604A.070 were also significantly amended in 2017. 2017 Nev. Stat., ch. 274, §§ 3-4, at 1439. As above, we consider the statutes as they applied at the time of the relevant events.

(ALJ) was correct when she held that the GPPDA violated NRS 604A.445 and NRS 604A.210. Accordingly, the district court erred when it granted judicial review and vacated the ALJ's order in this regard. But we agree with the district court that TitleMax's statutory violation was not "willful" and thus did not warrant the statutory sanctions imposed by the ALJ. Accordingly, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

In 2014, TitleMax offered a 210-day title loan to its customers in Nevada. This traditional 210-day loan agreement complied with NRS 604A.445(3) in that it lasted 210 days, payments were charged in installments, the payments were "calculated to ratably and fully amortize the entire amount of principal and interest" in the 210 days, there were no extensions to the loan, and there were no balloon payments. NRS 604A.445(3). These loans further included a contracted rate of interest, which was calculated into each payment. *See id.* An example of such a loan is reproduced in this table:

**Traditional 210-Day Title Loan for $5,800 at 133.7129%[3]**

| Month | Payment | Amount Toward Interest | Amount Toward Principal |
|---|---|---|---|
| 1 | $1,230.45 | $705.82 | $524.63 |
| 2 | $1,230.45 | $564.65 | $665.80 |
| 3 | $1,230.45 | $520.96 | $709.49 |
| 4 | $1,230.45 | $403.32 | $827.13 |

---

[3]This table is derived from a "representative loan transaction" provided in the record for a customer who borrowed $5,800 with an APR of 133.7129% on January 17, 2015, from TitleMax. This information was not provided to the customer in table format, nor did it explain the amount that would be applied toward interest and principal.

SUPREME COURT
OF
NEVADA

(O) 1947A

| | | | |
|---|---|---|---|
| 5 | $1,230.45 | $312.57 | $917.88 |
| 6 | $1,230.45 | $201.65 | $1,028.80 |
| 7 | $1,230.46 | $104.19 | $1,126.27 |
| **Totals** | $8,613.16 | $2,813.16 | $5,800.00 |

In 2014, TitleMax also began offering a "Grace Period Payment Deferment Agreement," marketed as an amendment and modification to the 210-day loan. Under the GPPDA, TitleMax collected seven months of interest-only payments calculated based on a static principal balance and then collected seven months of payments amortizing principal. An example of a GPPDA offered on the $5,800 loan at 133.7129% described above is reproduced in this table:

### GPPDA for $5,800 at 133.7129%[4]

| Month | Payment | Amount Toward Interest | Amount Toward Principal |
|---|---|---|---|
| 1 | $637.42 | $637.42 | $00.00 |
| 2 | $637.42 | $637.42 | $00.00 |
| 3 | $637.42 | $637.42 | $00.00 |
| 4 | $637.42 | $637.42 | $00.00 |
| 5 | $637.42 | $637.42 | $00.00 |
| 6 | $637.42 | $637.42 | $00.00 |
| 7 | $637.42 | $637.42 | $00.00 |

---

[4]This table is derived from the table provided to the same customer in his Grace Period Payments Deferment Agreement. However, the table provided to him only stated his monthly payment (column 2 in the table above); the table did not explain the amount applied toward interest and principal or show that the first seven payments were "interest only" payments and the last seven payments were "principal only" payments.

| | | | |
|---|---|---|---|
| 8 | $828.57 | $00.00 | $828.57 |
| 9 | $828.57 | $00.00 | $828.57 |
| 10 | $828.57 | $00.00 | $828.57 |
| 11 | $828.57 | $00.00 | $828.57 |
| 12 | $828.57 | $00.00 | $828.57 |
| 13 | $828.57 | $00.00 | $828.57 |
| 14 | $828.58 | $00.00 | $828.58 |
| **Totals** | $10,261.94 | $4,461.94 | $5,800 |

Critically, under the GPPDA, customers had the opportunity to make smaller monthly payments but the loan term was prolonged by seven months. Additionally, while the interest *rate* did not deviate from the contracted rate of interest under the GPPDA, the *amount* of interest paid by customers grew because the interest amount was calculated on a static principal balance rather than an amortizing principal that gradually decreased over the life of the loan.

The Nevada Department of Business and Industry, Financial Institutions Division (FID), through its Commissioner, regulates licensed title lenders in Nevada, including TitleMax. *See generally* NRS 604A.035; NRS 604A.402 (2007). The FID conducted its 2014 annual examination of TitleMax and issued a report on TitleMax's statutory and regulatory compliance. The FID concluded that the GPPDA violated NRS 604A.445, the statute regulating 210-day title loans, and NRS 604A.210, the statute regulating grace periods, because it charged customers "additional" interest beyond the 210 days' worth of interest provided for in the original title loan agreement and therefore constituted an impermissible "extension" of the

SUPREME COURT
OF
NEVADA

(O) 1947A

loan. It issued a "Needs Improvement" rating[5] to TitleMax and instructed TitleMax to stop offering the GPPDA. In a February 9, 2015, letter, TitleMax responded that the GPPDA complied with NRS 604A.445(3) and NRS 604A.210 because it created a "customer friendly" "grace period of deferment" that was offered "gratuitously" to customers and that customers were free to make prepayments or make payments as originally scheduled even if they had elected the GPPDA. TitleMax argued that the GPPDA created a true "grace period" because it gave customers an opportunity to make smaller monthly payments. The FID replied that it "stands by its position" regarding the GPPDA. At a follow-up inspection in early 2015, the FID found that TitleMax had continued to offer the GPPDA and issued an "Unsatisfactory" rating to TitleMax. TitleMax filed a declaratory relief action in district court, seeking interpretation of NRS 604A.445 and NRS 604A.210,[6] and the FID brought the underlying administrative disciplinary

---

[5]The record in this case indicates that the FID issues one of three ratings when it conducts annual examinations: satisfactory, needs improvement, and unsatisfactory.

[6]After the FID issued its "Needs Improvement" rating at the 2014 inspection and before the 2015 inspection was completed, TitleMax filed a declaratory relief action in district court, seeking an interpretation of NRS 604A.445 and NRS 604A.210. The district court dismissed the declaratory relief action, finding TitleMax had not exhausted its administrative remedies. This court reversed that order, holding that the district court erred because TitleMax raised only issues of statutory interpretation and thus exhaustion of administrative remedies was not required. *TitleMax of Nev., Inc. v. State, Dep't of Bus. & Indus., Fin. Insts. Div.*, Docket No. 69807 (Order of Reversal and Remand, October 4, 2017). Before TitleMax could litigate its declaratory relief action, the FID brought the underlying administrative disciplinary action.

action against TitleMax, alleging that TitleMax violated NRS 604A.445(3) and NRS 604A.210.[7]

After a three-day hearing in the administrative disciplinary action, an ALJ determined that the GPPDA violated NRS Chapter 604A because it extended the original 210-day loan and allowed TitleMax to charge additional interest. Accordingly, the ALJ ordered TitleMax to cease and desist offering the GPPDA. Further, pursuant to NRS 604A.900, the ALJ sanctioned TitleMax for willfully violating NRS 604A.445(3) and NRS 604A.210 by ordering that every GPPDA entered into after December 18, 2014 (the final date of the 2014 inspection), was void. Consequently, TitleMax was not entitled to collect, receive, or retain any principal, interest, or other charges with respect to loans entered into after this date. TitleMax petitioned the district court for judicial review. The district court granted TitleMax's petition and vacated the ALJ's order. This appeal by the FID follows.

## DISCUSSION

This court's role in reviewing a petition for judicial review of an administrative agency's decision is identical to that of the district court. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). An administrative agency's factual findings are reviewed for clear error or an abuse of discretion and must be supported by substantial evidence. NRS 233B.135(3)(e), (f); *Elizondo*, 129 Nev. at 784, 312 P.3d at 482. Legal conclusions, however, are reviewed de novo. *State, Dep't of Taxation v. Masco Builder Cabinet Grp.*, 127 Nev. 730, 735, 265 P.3d 666, 669 (2011). That being said, this court has "repeatedly recognized the authority of

---

[7]TitleMax stopped offering the GPPDA on new loans in December 2015.

agencies . . . to interpret the language of a statute that they are charged with administering; as long as that interpretation is reasonably consistent with the language of the statute, it is entitled to deference in the courts." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 122 Nev. 132, 157, 127 P.3d 1088, 1106 (2006). Accordingly, if the FID's interpretation of NRS Chapter 604A is "within the language of the statute," then this court will defer to that interpretation. *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013). When interpreting a statute, we look first to its plain language. *See Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983). If the language is clear and unambiguous, we do not look beyond it. *Id.*

*TitleMax's GPPDA violates NRS Chapter 604A*

Under NRS 604A.445, title lenders can offer two types of title loans to customers: a 30-day loan that can be extended up to six times in 30-day increments, *see* NRS 604A.445(1), (2); or a 210-day loan that cannot be extended, *see* NRS 604A.445(3). The 30-day loan allows the title lender to extend the 30-day term six times, and each extension provides 30 days of unamortized interest for a possible total of 210 days of unamortized interest. NRS 604A.445(1), (2). The 210-day loan prohibits unamortized interest by requiring "ratably and fully amortize[d]" interest. NRS 604A.445(3)(b). The 210-day loan also cannot be extended beyond the date for paying the loan in full under the loan agreement's original terms. NRS 604A.445(3)(c); *see also* NRS 604A.065(1) (defining "extension"). However, a lender may offer a grace period on a 210-day title loan. *See* NRS 604A.070 (2005). A grace period is "any period of deferment offered gratuitously by a licensee to a customer if the licensee complies with the provisions of NRS 604A.210." *Id.* NRS 604A.210, in turn, provides that a title lender cannot

"charge the customer . . . [a]ny additional fees or *additional interest* on the outstanding loan during such a grace period." (Emphasis added.) An extension does not include a grace period, just as a grace period does not include an extension. NRS 604A.065(2); NRS 604A.070(2). In sum, grace periods and extensions are mutually exclusive, and for a 210-day loan, grace periods are permissible but extensions are not.[8]

In 2014, TitleMax offered a 210-day loan and the GPPDA as an "amendment and modification" to that loan. TitleMax argues that the GPPDA does not violate NRS 604A.445(3) or NRS 604A.210. It argues that the GPPDA is a "period of deferment offered gratuitously" under NRS 604A.070 and therefore a permissible grace period. It asserts that as a grace period, the GPPDA is only governed by NRS 604A.070 and NRS 604A.210, not NRS 604A.445(3), which governs the 210-day loan. Additionally, it maintains that the GPPDA complies with the plain language of NRS 604A.210, which states that a lender "shall not charge the customer . . . *additional* interest" for a grace period. (Emphasis added.) In particular, TitleMax argues that during the grace period, it can charge unamortized interest at the *same rate* set forth in the original 210-day loan agreement because interest at the same *rate* is not "additional" interest. Conversely, the FID asserts that NRS 604A.070 and NRS 604A.210 must be read in conjunction with NRS 604A.445(3), because a title lender cannot offer a standalone "grace period" without any connection to an existing loan agreement. Consequently, the FID contends that the GPPDA violates NRS

---

[8]To be clear, title lenders may offer a deferment that extends the life of the loan beyond 210 days. However, that deferment must be a permissible grace period pursuant to NRS 604A.070 and NRS 604A.210 rather than an impermissible extension pursuant to NRS 604A.065 and NRS 604A.445(3)(c).

604A.445(3) because it charges *unamortized* interest. Additionally, the FID argues that the GPPDA effectively increases the contractual interest *amount* beyond the 210 days' worth of interest permitted under NRS 604A.445(3). Because the GPPDA increases the *amount* of interest that TitleMax collects beyond the 210 days' worth permitted under NRS 604A.445(3)(b), the FID asserts that the GPPDA charges the customer "additional interest" in violation of NRS 604A.210 and therefore constitutes an impermissible "extension" of the original 210-day title loan.

We agree with the FID and conclude that its interpretation fits squarely within the statutory language. First, as a title loan, the GPPDA *is* governed by NRS 604A.445, in addition to NRS 604A.070 and NRS 604A.210, and when read together, the statutes show that the GPPDA is an impermissible "extension" that charges impermissible "additional interest." The GPPDA must comply with the provisions that apply to the loan it is modifying and thus must comply with NRS 604A.445(3). NRS 604A.445(3) clearly states that the payments on a 210-day loan must ratably and fully amortize the entire amount payable on the loan. That restriction on a 210-day title loan cannot be circumvented by offering a grace period that effectively recalculates the payments during the original term of the loan so that they no longer "ratably and fully amortize the *entire* amount of principal *and interest* payable on the loan." NRS 604A.445(3)(b) (emphasis added). To be sure, NRS 604A.210(2) contemplates that interest may be charged during a grace period; it just cannot be "additional." Although NRS Chapter 604A does not define "additional,"[9] when read in harmony with

---

[9]We reject TitleMax's reliance on NRS 604A.210's legislative history, which indicates that when the statute was enacted in 2005, the original draft read "[a]ny . . . interest" but was changed during the drafting process

SUPREME COURT
OF
NEVADA

(O) 1947A

NRS 604A.445, NRS 604A.210 contemplates that "additional" is informed by the repayment schedule of the original loan—a loan in which the principal is to reduce with each payment so that the principal is paid fully, along with the interest. *Cf. Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006) ("Whenever possible, this court will interpret a rule or statute in harmony with other rules and statutes." (internal quotation marks omitted)).

Payments on a loan under the GPPDA *never ratably amortize*, not during the first 210 days where payments are only used to prevent the accrual of interest and not during the second 210 days where payments are applied to reduce principal. Under a 210-day title loan agreement envisioned by NRS 604A.445(3)(b), each monthly payment reduces both the principal and accruing interest according to an amortization schedule. This does not occur under the GPPDA. The FID argues that when TitleMax charges only interest for the first seven months under the GPPDA, it changes the contractual amount of interest, which is capped at 210 days' worth of amortized interest. This interpretation is supported by the plain language of NRS 604A.445. *See Taylor*, 129 Nev. at 930, 314 P.3d at 951; *Robert E.*, 99 Nev. at 445, 664 P.2d at 959. Additionally, the GPPDA's "grace period" does not actually *defer* a payment because the customer is making payments of "additional interest" during that period. *See* NRS

---

to "*additional* interest." *See* Assembly Daily Journal, 73d Leg., at 84 (Nev., April 25, 2005) (amendments to A.B. 384); Assembly Daily Journal, 73d Leg., at 63 (Nev., April 26, 2005) (amendments to A.B. 384); 2005 Nev. Stat., ch. 414, § 23, at 1686. While this drafting change indicates that the Legislature anticipated that some interest could be charged during a grace period, TitleMax does not cite to, nor can this court discern, any legislative history suggesting that the word "additional" was intended to refer to *rate* and not *amount*.

604A.070. Rather, after the first 210 days of charging *unamortized* interest, the GPPDA redirects payments toward the principal portion of the loan balance. This is a loan extension under the plain language of NRS 604A.065, which is forbidden by NRS 604A.445(3)(c). As a result, we conclude that the ALJ did not err when she concluded that TitleMax's GPPDA violated NRS 604A.445 and NRS 604A.210 and that the district court, in turn, erred when it granted the petition for judicial review and vacated the ALJ's order in this regard.

*Sanctions were not appropriate under NRS 604A.900 because TitleMax did not willfully violate NRS Chapter 604A*

A lender may not recover principal, interest, or other fees with respect to a loan where the lender has *willfully* entered a loan agreement, sought payment, or committed any other act in violation of NRS Chapter 604A. NRS 604A.900(1). The ALJ concluded that TitleMax willfully violated NRS 604A.445(3) and NRS 604A.210. As sanctions, she ordered TitleMax to cease and desist offering the GPPDA, that "every GPPDA entered into after December 18, 2014, [was] void, and TitleMax [was] not entitled to collect, receive or retain any principal, interest or other charges or fees with respect to those loans." The ALJ relied on the fact that TitleMax continued to offer the GPPDA after the FID gave TitleMax a "Needs Improvement" rating for violating NRS 604A.445(3) to find that TitleMax had acted willfully. The district court, however, concluded that even if TitleMax's interpretation of the statutes was not correct, at a minimum it was reasonable. The district court granted judicial review and reversed both the ALJ's finding that TitleMax willfully violated the statutory regulations and the ALJ's NRS 604A.900 sanctions. "Construction of a statute, including its meaning and scope, is a question of law, which this

court reviews de novo." *Century Steel, Inc. v. State, Div. of Indus. Relations*, 122 Nev. 584, 588, 137 P.3d 1155, 1158 (2006).

NRS Chapter 604A does not define "willfully," and this court has yet to interpret the term in the context of NRS 604A.900. However, we have observed that "'[w]illful' is a word 'of many meanings, its construction often being influenced by its context.'" *In re Fine*, 116 Nev. 1001, 1021, 13 P.3d 400, 413 (2000) (quoting *Screws v. United States*, 325 U.S. 91, 101 (1945)). "As a general rule, the word denotes an act which is intentional, or knowing, or voluntary, rather than accidental." *Id.* In the context of NRS 604A.900 and the conduct at issue here, the question is whether TitleMax acted reasonably in determining its obligations under the applicable statutes, engaging in a reasonable legal disagreement with the agency through the available avenues. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988) ("If an employer acts reasonably in determining its legal obligation, its actions cannot be deemed willful . . . ."); *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 188 & n.9 (3d Cir. 1988) (concluding that an employer who did not change its pay plan even after the Labor Secretary declared the plan improper under the Fair Labor Standards Act did not commit a "willful" violation of the law because the question of whether the plan was compliant with the Act was a close call); *see also* NRS 686B.1762 (defining "willful" in the insurance context as "with actual knowledge or belief that the act or omission constitutes a violation and with specific intent to commit the violation"); NRS 281A.170 (explaining that in the ethics in government context, a "willful violation" occurs when a public officer or employee "[a]cted intentionally and knowingly; or . . . [w]as in a situation where this chapter imposed a duty to act and the public officer or employee intentionally and knowingly failed to act"); *In re Fine*, 116 Nev. at

SUPREME COURT
OF
NEVADA

(O) 1947A

1022, 13 P.3d at 414 (concluding that, in a judicial discipline matter, "willful misconduct occurs when the actor knows he or she is violating a judicial canon or rule of professional conduct and acts contrary to that canon or rule in spite of such knowledge").

We conclude that TitleMax did not willfully violate NRS Chapter 604A by offering the GPPDA because its interpretation of the pertinent statutes was reasonable. While we conclude that the GPPDA violated NRS 604A.445 and NRS 604A.210, TitleMax's actions following the 2014 inspection tellingly demonstrate that it did not know if it was violating the applicable statutes and that it took active steps to discern whether the GPPDA ran afoul of the statutory scheme. Those steps included the following: consulting with counsel to determine whether the GPPDA violated NRS Chapter 604A, filing a declaratory relief action in the district court for clarification of the law, and making a good faith effort in its February 9 letter to resolve the issues with the GPPDA that the FID raised in the 2014 inspection. These steps taken by TitleMax demonstrate that it was faced with a difficult choice: it was aware of the GPPDA's effects, believed the GPPDA complied with NRS Chapter 604A, knew that the FID disagreed with that legal interpretation, and then used all available avenues to challenge the FID's decision, including filing an action for declaratory relief. *See Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 188 & n.9 (3d Cir. 1988) ("[P]rivate parties must retain a right to disagree with the Secretary's interpretation of the regulations, especially here where the question is a close one. Such disagreement is not willfulness."); *see also Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 680 (1st Cir. 1998) (opining that a "knowing" violation of the Fair Labor Standards Act should not "preclude[ ] legitimate disagreement" between an employer and

the regulating agency because doing so would put the putative employer in the untenable position of either accepting the agency's position or risk a finding of a willful violation of the Act). We conclude this cannot amount to a "willful" violation under NRS 604A.900(1). Therefore, the ALJ erred in concluding that TitleMax willfully violated the applicable statutes. As such, we affirm the district court's order vacating the sanctions imposed by the ALJ under NRS 604A.900.[10]

*CONCLUSION*

While marketed as a "modification" or "amendment" to a 210-day title loan, the GPPDA offered by TitleMax in 2014 and 2015 was an impermissible extension of its 210-day loan in violation of the plain language of NRS 604A.445. The GPPDA circumvented the statutory requirement that 210-day loans "ratably and fully amortize the entire amount of principal and interest payable on the loan," and as a result, charged the borrower "additional interest" in violation of NRS 604A.210. Accordingly, the district court erred when it granted the petition for judicial review to vacate the ALJ's order in this regard. However, we agree with the district court that TitleMax did not "willfully" violate the applicable statutes and affirm the district court's order insofar as it vacated the sanctions that the ALJ imposed pursuant to NRS 604A.900. We therefore

---

[10]TitleMax additionally argues that the FID should be estopped from arguing that TitleMax acted willfully because the FID engaged in improper ad hoc rulemaking. It also argues the sanctions were excessive and based on loans not before the court. We need not consider these arguments because they are moot in light of our conclusion regarding willfulness.

reverse the district court order granting judicial review to the extent that it vacated the ALJ's determination that TitleMax violated NRS 604A.445 and NRS 604A.210 and imposed administrative fines, but we affirm the order to the extent that it vacated the sanctions imposed for willful conduct under NRS 604A.900.

_Stiglich_____, J.
Stiglich

We concur:

_Gibbons_____, C.J.
Gibbons

_Pickering_____, J.
Pickering

_Hardesty_____, J.
Hardesty

_Parraguirre_____, J.
Parraguirre

_Cadish_____, J.
Cadish

_Silver_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A