142 Nev., Advance Opinion 38

IN THE SUPREME COURT OF THE STATE OF NEVADA

NEVADA HEALTH AND BIOSCIENCE
ASSET CORPORATION,
Appellant,
vs.
THE STATE OF NEVADA EX REL.
DEPARTMENT OF TAXATION AND
THE NEVADA TAX COMMISSION,
Respondent.

No. 89238

FILED

MAY 28 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review of a decision by the Nevada Department of Taxation. Eighth Judicial District Court, Clark County; Anna Albertson, Judge.

*Reversed and remanded.*

Fabian VanCott and Bryan D. Dixon, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Heidi J. Parry Stern, Solicitor General, and David J. Pope, Chief Deputy Attorney General, Carson City,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

This case concerns the scope of state sales and use tax exemptions for religious, charitable, or educational organizations that

26-24155

partner with the government. The Nevada Health & Bioscience Asset Corporation (NHBAC) is a nonprofit organization established to privately fund and manage the development of a state-of-the-art medical education building for the University of Nevada, Las Vegas School of Medicine. When NHBAC sought a sales and use tax exemption based on its nonprofit status, the Nevada Department of Taxation denied its application under NRS 372.340, which withholds such exemptions from government contractors, thereby launching this dispute over the proper procedure for evaluating this type of application. We hold that the Department erred by failing to evaluate NHBAC's application according to the criteria for charitable organizations established in NRS 372.3261 and by reading NRS 372.340 to preclude otherwise-eligible entities from receiving tax-exempt status. We further hold that under the correct criteria, NHBAC qualifies for sales and use tax exemption as a charitable organization. We therefore reverse the district court's denial of NHBAC's petition for judicial review and remand to the district court so that it can instruct the Department to approve NHBAC's application and grant it a letter of exemption.

I.

The UNLV School of Medicine opened in 2017 with plans to operate out of temporary facilities until a permanent state-of-the-art medical education building could be built. Clark County conveyed property to UNLV to be used for the new building, with a deed restriction requiring construction to be commenced before July 1, 2021, or else the property could revert to Clark County. Construction efforts stalled, however, due to various political and logistical roadblocks not uncommon for public works projects of this scale. To overcome these challenges and stick to the deed restriction's timeline, a coalition of charitable foundations and individuals came together in 2019 to establish NHBAC. According to its bylaws,

NHBAC is a nonprofit organization formed "specifically for the funding, design, development, construction, oversight and ownership of a medical school facility for the UNLV School of Medicine," with a broader mission of remedying Nevada's physician shortage and improving the state's healthcare landscape. NHBAC soon entered into a novel public-private partnership arrangement with UNLV and the Nevada System of Higher Education (NSHE) in which NHBAC committed to complete development and construction of the new building at no cost to UNLV, largely by sourcing private charitable contributions.

As described in the Development Agreement between NHBAC, UNLV, and NSHE, the arrangement was to proceed as follows: UNLV and NSHE agreed to transfer to NHBAC the parcel of land designated to host the medical education building; NHBAC would lead the development of construction plans and specifications at its own expense, subject to approval by UNLV and the City of Las Vegas; NHBAC would manage construction in accordance with those plans and specifications; and, upon completion, NHBAC would enter into a lease agreement with UNLV, charging a rental rate of $1 per year until 2030, at which time NHBAC would transfer the land and the new building to UNLV free of encumbrances. Because NHBAC operated with few employees and no in-house construction expertise, it committed to retain licensed construction contractors and subcontractors as part of its development team, positioning the organization primarily in a role of project management, rather than of direct implementation.

Shortly after formation, NHBAC sought and received tax-exempt status as a § 501(c)(3) organization under federal law, 26 U.S.C. § 501(c)(3), as well as under NRS 361.099 for the designated parcel of land. NHBAC then applied to the Nevada Department of Taxation for exemption

from state sales and use taxation under NRS 372.326, which permits granting such exemptions to certain types of nonprofit organizations. On its application form, NHBAC checked the box indicating that it was applying as an educational organization as opposed to a charitable or religious one. NHBAC supported its application with copies of its bylaws and articles of incorporation, relevant financial information, its letter of federal exemption, and—after the Department requested supplemental documentation—its Development Agreement with UNLV, a letter of support from UNLV's president describing the partnership, and the project schedule.

The Department rejected the application, indicating in its denial letter that NHBAC did not meet the criteria for educational organizations defined in NRS 372.3261(4). NHBAC subsequently sought reconsideration from the Nevada Tax Commission. Before the Commission, the Department argued, first, that NHBAC was not an educational organization because the organization's purpose was not to operate a school or provide instruction. Second, it argued that NHBAC did not qualify for tax-exempt status as a charitable organization because NRS 372.340 withholds such status from government contractors. According to the Department, NRS 372.340 applied to NHBAC because NHBAC would be "fulfilling a contract" with UNLV and was not a constituent part of the university. In response, NHBAC contended that its initial self-identification as an educational organization was a scrivener's error and argued that the Commission should nonetheless reconsider and approve its application under NRS 372.3261(3)'s criteria for charitable organizations, and that NRS 372.340 had no bearing on its application.

After a hearing, the Commission summarily upheld the Department's decision to deny NHBAC's application for tax-exempt status. NHBAC then petitioned for judicial review from the Eighth Judicial District Court. Because the Commission had not provided a written explanation of its decision, the district court first remanded to the Commission with instructions to articulate findings of fact and conclusions of law for the district court to review. In response, the Commission acknowledged that NHBAC sought exemption "as an educational and/or charitable organization" but rejected the application under either classification based on the Department's reading of NRS 372.340, which the district court likewise endorsed. NHBAC appeals.

## II.

When assessing an appeal after petition for judicial review of an administrative agency's decision, this court's role is identical to that of the district court. *State, Dep't of Bus. & Indus., Fin. Insts. Div. v. TitleMax of Nev., Inc.*, 135 Nev. 336, 340, 449 P.3d 835, 839 (2019). Under NRS 233B.135, an agency's legal conclusions are reviewed de novo, whereas its "factual findings are reviewed for clear error or an abuse of discretion and must be supported by substantial evidence." *TitleMax of Nev.*, 135 Nev. at 340, 449 P.3d at 839. Questions of statutory construction are also reviewed de novo. *Id.* at 343, 449 P.3d at 841. The extent to which this court will defer to an agency's interpretation of the statutes it is charged with administering has not been definitively resolved. *Cf. United States v. State Eng'r*, 117 Nev. 585, 589, 27 P.3d 51, 53 (2001) (suggesting deference is appropriate where the agency's technical expertise is implicated). But regardless, deference "does not apply when the agency's interpretation falls outside the statute's plain text." *Redev. Agency of City of Sparks v. Nev. Lab. Comm'r*, 140 Nev., Adv. Op. 44, 551 P.3d 303, 308 (2024); *State Eng'r*,

Supreme Court
of
Nevada

5

117 Nev. at 589-90, 27 P.3d at 53 (stating that an agency's interpretation "does not control if an alternative reading is compelled by the plain language of the provision"). And if the agency's decision is arbitrary or capricious, based upon unlawful procedure, or affected by error of law, this court may set it aside. NRS 233B.135(3); *see also Jim L. Shetakis Distrib. Co., Inc. v. State, Dep't of Tax'n*, 108 Nev. 901, 904, 839 P.2d 1315, 1317 (1992) (applying NRS 233B.135 to review a decision by the Nevada Department of Taxation).

III.

The straightforward question presented in this case is whether NHBAC is eligible for sales and use tax exemption under Nevada's Sales and Use Tax Act. NHBAC argues that it is, as authorized by NRS 372.326 and NRS 372.3261; the Department disagrees.

Statutory interpretation requires, first and foremost, that we adhere to the plain text of a statute where that text is clear. *McKay v. Bd. of Supervisors of Carson City*, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). NRS 372.326 provides that the sale, use, or consumption of tangible personal property "by or to a nonprofit organization created for religious, charitable, or educational purposes" is exempt from taxation. The criteria for evaluating such organizations are established in NRS 372.3261, under which an entity applying for sales and use tax exemption must satisfy requirements specific to a particular type of organization (religious, charitable, or educational), NRS 372.3261(2)-(4), as well as requirements mirroring those imposed on nonprofit organizations by federal tax exemption law, NRS 372.3261(5). A charitable organization is one whose "sole or primary purpose" is either (1) to "[a]dvance a public purpose, donate or render [its services] gratuitously or at a reduced rate," and "benefit a substantial and indefinite class of persons who are the legitimate subjects

SUPREME COURT
OF
NEVADA

6

of charity"; or (2) to "[p]rovide services that are otherwise required to be provided by" state or local government. NRS 372.3261(3)(b).

Applying a plain-text reading of these criteria, it is clear that NHBAC satisfies the requirements to be recognized as a charitable organization. The record reflects that in the proceedings below, NHBAC supported its application for tax exemption by providing, most relevantly, copies of its bylaws and its articles of incorporation, the Development Agreement between NHBAC and UNLV detailing the terms of the project, and relevant financial statements. *See* NAC 372.700(1) (requiring applicants to submit these materials). Together, these documents demonstrate NHBAC's primary public purpose to address Nevada's pressing healthcare needs and to remedy its critical physician shortage, its plans to serve this purpose gratuitously by relying on private contributions, and its intention to gift the medical education building to UNLV to provide modern medical education to UNLV's students. Crucially, NHBAC also showed that it satisfies the federal requirements to be recognized as a public charity under 26 U.S.C. §§ 501(c)(3) and 509(a)(3), as well as state requirements for property tax exemption for the project's parcel of land, consistent with the requirements of NRS 372.3261(5). The evidence thus demonstrates that NHBAC meets the statutory criteria for charitable organizations. Indeed, the Department makes no attempt to argue otherwise; it instead sidesteps these criteria entirely to contest NHBAC's application on other grounds, discussed in detail below.

We recognize that this conclusion requires overcoming the presumption of taxability that typically governs the interpretation of tax provisions. In Nevada, for example, NRS 372.155 states that "[f]or the purpose of the proper administration of [NRS Chapter 372] and to prevent

Supreme Court
of
Nevada

7

evasion of the sales tax, it is presumed that all gross receipts are subject to the tax until the contrary is established" by specific exemption. NRS 372.155(1); *Campbell v. Nev. Tax Comm'n*, 109 Nev. 512, 516, 853 P.2d 717, 719 (1993). Moreover, tax exemptions "are strictly construed in favor of finding taxability and any reasonable doubt about whether an exemption applies must be construed against the taxpayer." *Jim L. Shetakis Distrib.*, 108 Nev. at 907, 839 P.2d at 1219 (citing *Sierra Pac. Power v. Dep't of Tax'n*, 96 Nev. 295, 297, 607 P.2d 1147, 1148 (1980)); *see also Dep't of Tax'n v. DaimlerChrysler Servs. N. Am., LLC*, 121 Nev. 541, 545, 119 P.3d 135, 137 (2005) ("Exemptions, no matter how meritorious, are of grace, and must be strictly construed." (citation omitted)); *but see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 359 (2012) (characterizing the strict construction of tax exemptions as a "false notion").

These default principles yield, however, where sound statutory interpretation so requires. *See, e.g., Fitzgerald Truck Parts & Sales, LLC v. United States*, 132 F.4th 937, 942-44 (6th Cir. 2025) (construing a tax exemption broadly where authorized by the plain text's common meaning and the statute's purpose); *Covenant Healthcare Sys., Inc. v. City of Wauwatosa*, 800 N.W.2d 906, 915 (Wis. 2011) (recognizing a "strict but reasonable" interpretation of tax exemption statutes); *Am. Bridge Co. v. Smith*, 179 S.W.2d 12, 16 (Mo. 1944) (declining to "greatly limit the embrace of the [contested] exemption" in light of textual and historical support for a broader interpretation). In *Covenant Healthcare Systems*, for example, the Wisconsin Supreme Court rejected an unreasonably strict interpretation of a tax exemption scheme so as not to "defeat the legislative intent of creating the exemption—here, to encourage not-for-profit hospitals to provide care for the sick." 800 N.W.2d at 915, 922; *see also* 71 Am. Jur. 2d *State and*

*Local Taxation* § 207 (2023) (stating that the rule of strict construction "should not force the conclusion that the legislature intended other than that which is expressed in plain language if the exemption as expressed in plain language is reasonable"); Scalia & Garner, *supra* at 355-56 (discouraging the "false notion that words should be strictly construed" and clarifying that words should instead be given their "fair meaning"). And the presumption of taxability is necessarily weaker as applied to charitable organizations, in recognition of the tradeoff underlying exemptions for such entities. *See State and Local Taxation, supra* § 248 (collecting cases for the principle that "[t]he fundamental ground upon which the [charitable] exemption is based is the benefit conferred upon the public by such institutions and the consequent relief, to some extent, of the burden imposed on the state to care for and advance the interest of its citizens").

We thus conclude that the clear authorization of tax exemption for charitable organizations found in NRS 372.326 overcomes the presumption of taxability in this case. The agency's refusal to recognize NHBAC as an eligible charitable organization—or to meaningfully engage with the relevant statutory criteria and NHBAC's proffered documentation in its analysis—was arbitrary and capricious, and an abuse of discretion. *Campbell*, 109 Nev. at 515, 853 P.2d at 719. We therefore set the Department's decision aside and conclude that NHBAC qualifies for tax exemption as a charitable organization under NRS 372.326.

IV.

The Department attempts to avoid applying the above criteria by instead asserting that (1) NHBAC cannot seek review as a charitable organization because it failed to check the correct box on its application, and (2) even if it could be reviewed as such, NRS 372.340 disqualifies

Supreme Court
of
Nevada

9

government contractors like NHBAC from receiving tax exemption. We reject these arguments in turn.

## A.

First, the Department asserts that it need not evaluate NHBAC's application under the criteria for charitable organizations because NHBAC identified itself in its original application as an educational organization, not as a charitable one. NHBAC argues that on reconsideration, it sufficiently clarified to the Commission that it was applying as a charitable organization and that the Commission erred by not accepting it as such.

The Department is correct that NHBAC's initial application indicated that it was applying as an educational organization. But when requesting reconsideration, NHBAC made clear that this selection was a scrivener's error—a reasonable one, we note, given that its goals are education-related—and that it sought reconsideration as a charitable organization. The Department concedes this fact by acknowledging in its briefing that "NHBAC applied for an exemption from sales and use tax, first as an educational organization, and then as a charitable organization." And the Commission's denial letter acknowledged, twice, that NHBAC applied "as an educational and/or charitable organization." The Department's contention on appeal that NHBAC only ever submitted itself for evaluation as an educational organization thus fails by the agency's own repeated admission, as does its related assertion—made for the first time at oral argument—that because NHBAC only applied as an educational organization, we lack subject-matter jurisdiction over this appeal. To the contrary, the record reflects that by the time the Commission reviewed NHBAC's application, NHBAC had raised the issue of whether it was eligible as a charitable organization.

But instead of reconsidering the application by applying the criteria for charitable organizations, the Commission—like the Department—focused on NRS 372.340 and NHBAC's status as a government contractor without referencing NRS 372.3261 at all, and the district court subsequently did the same. This was error. NAC 372.700(6) provides that "[u]pon reconsideration, the Commission may grant or reissue the letter of exemption if the organization has presented satisfactory evidence that it complies with the standards for exemption." This language affords the Commission discretion in reconsidering applications, and nowhere does it state that an application may *only* be reconsidered according to the initially selected classification. Rather, the limitation imposed turns on whether NHBAC's application contained the evidence necessary to evaluate the criteria for charitable organizations. As discussed above, NHBAC's application contained such evidence. NAC 372.700 requires organizations requesting exemption to submit, in addition to any other evidence the Department requests, (a) their bylaws; (b) their articles of incorporation; (c) relevant financial information regarding income and expenditures; (d) letters of exemption issued by other governmental agencies; and (e) for charitable organizations only, "an outline of its charitable activities, fund raisers and goals, and a copy of its business or strategic plan." NAC 372.700(1). NHBAC's initial application contained items (a)-(d). And after the Department requested supplementary information, albeit to conduct review under the criteria for educational organizations, NHBAC provided evidence to satisfy item (e): the Development Agreement between NHBAC and UNLV, a letter of support from UNLV's president describing the partnership, and its project schedule. It is thus evident that the Commission had the documentation necessary to

reconsider NHBAC as a charitable organization applicant. As discussed above, it abused its discretion by failing to follow this evidence to its logical conclusion: that NHBAC met the criteria for charitable organizations under NRS 372.3261.

### B.

Second, and most significantly, the Department avoids engaging with the NRS 372.3261 criteria by arguing that because NRS 372.340 disqualifies government contractors from sales and use tax exemption, NHBAC is ineligible for tax-exempt status, as a threshold matter, by virtue of its contract with UNLV. NHBAC argues that NRS 372.340 plays no role in the evaluation of applications for sales and use tax exemption and cannot be used to override the NRS 372.3261 criteria.

NRS 372.340 states that "[t]he taxes imposed under this chapter *apply* to . . . a contractor for a governmental, religious or charitable entity which is otherwise exempted from the tax unless the contractor is a constituent part of that entity." (emphasis added). Meanwhile, according to the relevant statutes and regulations, the procedure for evaluating tax exemption applications is as follows. While NRS 372.3261 defines which organizations are eligible for tax exemption, NRS 372.348 mandates that "[a]ny nonprofit organization created for religious, charitable, or educational purposes that wishes to claim an exemption pursuant to NRS 372.326, must file an application to the Department to obtain a letter of exemption." NRS 372.348(1). NAC 372.700 elaborates on this procedure, authorizing the Department to deny applications in two circumstances, one procedural and one substantive: where "(a) [t]he organization has failed to submit sufficient information on which to grant an exemption; or (b) [t]he

Supreme Court
OF
Nevada

12

organization does not meet the standards for exemption." NAC 372.700(4).[1] The regulation clarifies that the term "standards for exemption" refers to the criteria set out in NRS 372.3261. NAC 372.700(7). The review procedure and relevant criteria as defined in NRS 372.3261, NRS 372.348, and NAC 372.700 are clearly stated on the Department's application form, as well as on the Department's template response letter. Notably, these provisions and regulations make no mention of NRS 372.340.

The first step in the Department's evaluation of an application, then, is determining whether the organization meets the "standards of exemption" in NRS 372.3261. But that is not what happened here. Despite the thorough recitation of the proper procedure on the relevant forms, on reconsideration, the agency bypassed whether NHBAC was eligible for general tax-exempt status based on the applicable standards for exemption and rested its entire analysis on the idea that NHBAC was precluded from tax exemption as a government contractor under NRS 372.340. That the Department treated NRS 372.340 as a threshold inquiry miscomprehends that the term "standards for exemption" has a specific usage in this context, clearly stated in NAC 372.700(7), that does not include evaluating whether the applicant has entered a contract with the government within the meaning of NRS 372.340. In fact, nothing in the text of these provisions indicates that NRS 372.340 overrides the established procedure for evaluating these applications. We decline to disrupt that evaluation by writing NRS 372.340 into the review process ourselves. *See Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 122 Nev. 132, 156, 127 P.3d 1088, 1105

---

[1]NAC 372.700 was amended in 2024, while this case was pending judicial review in the district court, but the provisions at issue were merely renumbered. *See* NAC 372.700 (2000).

(2006) (stating that if separate provisions present a possible conflict, this court "attempts to construe both statutes in a manner to avoid conflict and promote harmony" (quoting *Beazer Homes Nev., Inc. v. Eighth Jud. Dist. Ct.*, 120 Nev. 575, 587, 97 P.3d 1132, 1140 (2004))); *see also* Scalia & Garner, *supra* at 180 ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). The Department's attempt to do so on its own justifies reversal; as previously discussed, it should instead have applied NRS 372.3261's criteria for charitable organizations and found NHBAC eligible for tax-exempt status.

It is possible, however, that the Department was only incorrect in its analytical order of operations and that once NHBAC gains general tax-exempt status as a charitable organization, it may nevertheless be subject to sales and use taxation to the extent that it operates as a government contractor, in partnership with UNLV or otherwise. A question thus remains as to whether NRS 372.340 requires NHBAC and other religious, charitable, or educational organizations to pay sales and use tax on particular transactions made in furtherance of particular contracts.

In attempting to resolve this question, the parties focus on the meaning of "contractor" as used in NRS 372.340. Crucially, this term is not defined in NRS 372.340 or elsewhere in NRS Chapter 372. To fill this void, the Department references *Black's Law Dictionary*, the most recent version of which sweepingly defines "contractor" as "[a] party to a contract" or "one who contracts to do work for or supply goods to another." *Contractor*, *Black's Law Dictionary* (12th ed. 2024). Adopting this broad definition, the Department decided that because NHBAC is fulfilling a contract with UNLV and NSHE, it is a government contractor and therefore precluded from sales and use tax exemption by NRS 372.340. In contrast, NHBAC

points to the narrower definition of "contractor" found in other chapters of the Nevada Revised Statutes: NRS Chapter 338, which addresses public works, defines a "contractor" as "(a) [a] person who is licensed pursuant to the provisions of Chapter 624 of NRS[; or] (b) [a] design-build team." NRS 338.010(4). Following this trail of breadcrumbs to NRS Chapter 624—a chapter dedicated to the subject of contractors—reveals that a "contractor" is defined there as "synonymous with 'builder.'" NRS 624.020(1). The term is further defined as inclusive of both "any person . . . acting solely *in a professional capacity*" in a construction context (e.g., to "construct, alter, repair . . . any building, highway, road, railroad, excavation or other structure project, development, or improvement") and "a construction manager who performs management and counseling services on a construction project *for a professional fee*." NRS 624.020(2), (4) (emphasis added). Notably, the provision excludes from its definition "an owner of a planned unit development" who enters into agreements with licensed general contractors to have them "construct the entire work of improvement" on the owner's behalf. NRS 624.020(5).

Based on the definitional silence of NRS 372.340 and the disparate meanings of the term "contractor" found elsewhere, we conclude that NRS 372.340 is ambiguous. We therefore look to legislative history for clarification of the statute's meaning. *DaimlerChrysler*, 121 Nev. at 548, 119 P.3d at 139. NRS 372.340 was amended in 1985, and the statute became effective in 1987 following voter approval. 1985 Nev. Stat., ch. 513, at 1562-64. The bill's sponsors explained that the provision was designed to codify into Nevada law the federal case of *United States v. New Mexico*, 455 U.S. 720 (1982). Hearing on A.B. 502 Before the Assemb. Comm. on Tax'n, 63d Leg. Session, at 1-2 (Nev., Apr. 23, 1985) (explaining that "the

Supreme Court
of
Nevada

15

[tax] provisions had to be amended in some manner" to align with the *New Mexico* decision). In *New Mexico*, the U.S. Supreme Court addressed whether three nonexempt private contractors could *gain* tax-exempt status otherwise unavailable to them to avoid state sales and use taxation on specific transactions made in furtherance of contracts with the federal government. 455 U.S. at 722-28. The Court held that federal contractors cannot claim immunity from state taxation solely by virtue of their work on the government's behalf. *Id.* at 735-36. By codifying this holding, NRS 372.340 was thus intended to close a loophole through which private contractors were piggybacking onto the federal government's tax-exempt status to claim for themselves an exemption for which they were otherwise ineligible. Hearing on A.B. 502 Before the Assemb. Comm. on Tax'n, 63d Leg. Session, at 1-2 (Nev., Apr. 23, 1985) (explaining that the purpose of the bill was to ensure that "federal contractors pay the same amount of sales tax" as normal purchasers). In turn, the later enactment of NRS 338.1423 sought to close a related loophole emerging in the wake of NRS 372.340 through which government entities were lowering the cost of public works construction projects by applying their tax-exempt status to pay for their contractors' construction materials tax-free, rather than having the contractors purchase their own materials subject to taxation. Hearing on A.B. 332 Before the Assemb. Comm. on Gov't Affairs, 78th Leg. Session, at 5-7, 10-12 (Nev., Mar. 25, 2015).

This history illuminates an important point about NRS 372.340 that does not turn on how broadly "contractor" is defined: the statute operates to require taxation on particular transactions or acts taken by nonexempt actors. It follows that such limitations would have no effect on entities that are *already exempt* from taxation. The Department's use of

NRS 372.340 to deny NHBAC tax-exempt status therefore put the cart before the horse, effectively refusing NHBAC the possibility of tax exemption on *any* purchase, regardless of its relationship to NHBAC's contract with UNLV and NSHE. And contrary to the Department's assertions, *New Mexico* does not support its position, as neither that case nor NRS 372.340 contemplate that already-exempt nonprofits should *lose* tax-exempt status simply by entering into a contract with the government. Similarly, the Department's remaining authorities address only nonexempt private contractors, *see, e.g., State v. Kelly-Ryan, Inc.*, 110 Nev. 276, 278, 871 P.2d 331, 333 (1994) (describing Kelly-Ryan, Inc. as a "general contractor"); *Maecon, Inc. v. State, Dep't of Tax'n*, 104 Nev. 487, 488, 491-92, 761 P.2d 411, 411, 413-14 (1988) (describing Maecon, Inc. as a "general engineering contractor"), and the Department does not explain why those cases should be extended to govern already-exempt nonprofit organizations.

Moreover, extending NRS 372.340 in this way would be inconsistent with the purpose of affording such exemptions in the first place: simply by entering into a contract with the government, nonprofits would be stripped of their tax-exempt status in regard to any transactions made pursuant to that contract. For example, a tax-exempt food bank that contracts to provide lunches to a public school would be deemed a government contractor under such an analysis, triggering NRS 372.340 and requiring the food bank to pay taxes on purchases made to serve the public school. Such a rule would weaken the incentives of nonprofit tax exemption and deter nonprofits from partnering with the government, thereby conflicting with the principles regarding tax exemptions for charitable organizations detailed above. *Fitzgerald*, 132 F.4th at 948 (rejecting a strict interpretation of a tax exemption statute that would subvert the incentives

of a charitable exemption); *cf. Fairbanks N. Star Borough v. Dena Nena Henash*, 88 P.3d 124, 134 (Alaska 2004) ("Assuming that [a nonprofit tax exemption applicant] was a government contractor, we decline to hold that its government contractor status necessarily renders [it] altogether ineligible for any exemption.").

Because we hold that NRS 372.340 categorically does not factor into the initial review of applications for tax exemption under NRS 372.326, does not alter an already-exempt entity's existing status, and instead only limits nonexempt entities working with governmental, religious, or charitable entities, we need not otherwise settle the definition of "contractor" as used in this provision; for now, it is enough to establish that the provision does not apply to religious, charitable, or educational nonprofit organizations with tax-exempt status under NRS 372.326. A future case involving nonexempt actors partnering with tax-exempt governmental, religious, or charitable entities may more squarely present that issue. We also note that under this holding, the Department will not lose all tax revenue from this project: NRS 372.340 makes clear that even with NHBAC operating as a tax-exempt charitable organization, the nonexempt private contractors it employs could still be subject to taxation. *See also Steiner Constr. Co. v. Comptroller*, 121 A.2d 838, 843 (Md. 1956) (holding that a private contractor working with a tax-exempt corporation is not itself exempt from taxation). Our holding does not, therefore, create a loophole through which government agencies or construction professionals may enlist nonprofit organizations to dodge state taxation, nor does it contradict the state's general policy preference, as cited by the Department, that construction materials be taxed. It instead ensures that the Department will properly apply the relevant regulatory framework to

Supreme Court
of
Nevada

18

determine nonprofit tax-exempt status, while still allowing it to tax purchases by nonexempt private entities working with the government, consistent with NRS 372.340's limitations.

V.

Though the statutory and regulatory criteria for granting tax-exempt status to religious, charitable, and educational organizations are clear, the Department failed to correctly apply them to NHBAC's application. We hold that applications for state sales and use tax exemption by such organizations filed pursuant to NRS 372.326 must be evaluated squarely under the standards for exemption defined in NRS 372.3261. We also hold that NRS 372.340 does not apply to nonprofit organizations that receive tax-exempt status under those standards. The district court's order denying judicial review is thus reversed, and we remand to the district court with instructions that it in turn remand the case to the Department to approve NHBAC's application and grant it a letter of exemption.

_____ , J.
Pickering

We concur:

_____ , C.J.
Herndon

_____ , J.
Bell

_____ , J.
Cadish

_____ , J.
Parraguirre

_____ , J.
Stiglich

_____ , J.
Lee

SUPREME COURT
OF
NEVADA